THE COVENANT MUTUAL BENEFIT ASSOCIATION OF
ILLINOIS.

v.

CATHARINE CONWAY.

1. EVIDENCE—ADMISSIONS OF AGENT.—The statements or admissions
made by an agent while engaged in the transaction of the business of his
principal, are a part of the *res gestæ* and competent evidence; but admissions
made by him after the transaction, in casual conversation with various persons
in reference to the transaction, are not competent, and do not bind his principal.

2. LIFE INSURANCE—WHEN CONTRACT COMPLETED.—A made applica-
tion for insurance on his life to the agent of appellant. The application was
received by the agent. A was examined, and gave his note to the agent for
the first payment. Before the note was paid or the application forwarded to
the company for its approval, according to its rules, A was killed. *Held*, that
until the application had been approved by the company, there was no con-
tract of insurance; the minds of the contracting parties did not meet.

3. AUTHORITY OF AGENT.—The agent had no authority beyond solicit'ng
applications, and could not bind the company by any contract which he
might make; and even if he assumed to have authority to make a valid con-
tract of insurance, he could not bind the company unless he had been held
out as a general agent, and the circumstances were such as to warrant the
deceased in supposing he had the powers so assumed.

4. APPLICATION FOR INSURANCE.—An application for insurance is not a
contract, but a mere offer which may be accepted or rejected.

APPEAL from the Circuit Court of Madison county; the Hon.
AMOS WATTS, Judge, presiding.    Opinion filed April 14, 1882.

Messrs. MCKENZIE & CALKINS, for appellant; that if the
complainant's construction of the application is correct, then
it was an executed contract that must be sued at law, and a
court of equity has no jurisdiction, cited Lane v. Adams, 19
Ill. 167; Thomas v. Caldwell, 50 Ill. 138; Long v. Barker,
85 Ill. 431; Puterbaugh v. Elliott, 22 Ill. 157; C. & O. Canal
Co. v. Knapp, 9 Pet. 466; Bank of Columbia v. Patterson, 7
Cranch, 297.

If complainant was entitled to recover, it could have been
done under the common counts: Throop v. Sherwood, 4 Ill.
92; Wheeler v. Brown, 28 Ill. 369; First Nat. Bank v. Hart,

55 Ill. 62; Rockford Ins. Co. v. Nelson, 65 Ill. 415; Pro. Life Ins. Co. v. Palmer, 81 Ill. 88; Rev. Stat. Chap. 10, § 10.

There could be no contract until the fee was paid. The agent could not waive this provision: Bliss on Life Ins. 487; Buffum v. Fayette Mut. Ins. Co. 3 Allen, 360.

Payment of the fee and approval of the application, were precedent conditions: Peoria Ins. Co. v. Watson, 22 Ind. 73; Campbell v. Am. Ins. Co. 1 McArthur, 246; Herman v. Phœnix Mut. Ins. Co. 17 Minn. 154; Thayer v. Middlesex Ins. Co. 10 Pick. 326; Bliss on Life Ins. 229; Mulvey v. Shawmut Mut. Ins. Co. 4 Allen, 116; Stockton v. Firemen's Ins. Co. 10 Ins. L. J. 834; Giddings v. N. W. Mut. Life Ins. Co. 10 Ins. L. J. 39.

There was no binding contract of insurance : Collins v. Ins. Co. of Phila. 7 Phila. 201; Bliss on Life Ins. 230 ; Whiting v. Mass. Mut. Life Ins. Co. 10 Ins. L. J. 147; Piedmont Ins. Co. v. Ewing, 92 U. S. 377.

Simply executing and delivering the note did not entitle the applicant to a policy: Herman v. Ins. Co. 17 Minn. 154; Schwartz v. Germania Ins. Co. 18 Minn, 456; Lynn v. Burgoyne, 13 B. Minn. 400; Catoir v. Am. Life Ins. Co. 33 N. J. 487; Hoyt v. Mut. Ben. Ins. Co. 98 Mass. 539.

Mr. CYRUS HAPPY, for appellee, cited Phillips on Ins. 13; Brutley v. Col. Ins. Co. 17 N. Y. 421; Whitaker v. Farmers' Ins. Co. 29 Barb. 312; Davenport v. Peoria Ins. Co. 17 Iowa, 276.

In support of the equitable jurisdiction of the court: Dinning v. Phœnix Ins. Co. 68 Ill. 414.

WALL, J. This was a bill in chancery filed by appellee against appellant. The bill alleged that John Conway, deceased, was the husband of appellee; that said Conway was a member of the order of Odd Fellows; that appellant was a corporation organized for the purpose of insuring the lives of members of said order; that appellant, through Squires, its agent, induced Conway to make his application to become insured in said corporation, and in consideration that he would make said application and pass the required examination, showing his physical condition to be of an insurable state of soundness, and

pay the prescribed membership fee, that said corporation would issue and deliver to said Conway, a policy insuring his life for the benefit of complainant; that said Conway made said application, and was examined by Dr. Youree, who certified in the usual form, and that said Conway then paid the membership fee to said agent, including $1, paid for examination, and that said application and membership fee were accepted by said agent, who informed said Conway that his life was from that time insured; that said Conway died a few days later, and that the appellant did ·not, during the life-time of said Conway, nor since his death, issue said policy; nor has the appellant returned the said membership fee; prays that the appellant be decreed to issue the policy according to the application, and pay the amount due thereon to the complainant. The answer denies that there was· any contract for insurance; that the agent made such contract or had power to do so; asserts that the alleged application was a mere proposal for insurance which the company was not bound to accept; denies that the membership fee was ever paid, and asserts that it was one of the conditions of issuing a policy that the membership fee should be paid in advance, and that the application must in all cases be approved by the company, and in general, denies all the material allegations of the bill so far as they refer to the action or supposed liability of the defendant. The ·circuit court, upon hearing, found the allegations of the bill to be true, and decreed the payment of fourteen hundred dollars to the complainant, and the defendant brings the record to this court by appeal, assigning various errors. The sixth and seventh assignments question the propriety of the decree upon the evidence before the court, and in the view we take of the case, these are the only assignments requiring consideration. The theory of the bill is that there was a valid and binding contract of insurance; that the deceased had done all that he was required to do, and that the company was bound to issue the policy, or certificate of membership, and not having done so, that a court of equity will compel the performance of the obligation, and having jurisdiction of the parties and the subject-matter, will proceed to administer full justice by decreeing the payment of the amount

that would be due under the policy. It would seem upon principle that as the right must depend upon a valid contract for insurance, and as the policy is merely evidence of the contract, and as the amount insured is now payable, that a court of law is the proper forum; but there are abundant precedents establishing the jurisdiction of chancery in such cases, and we shall not stop to discuss that view of the case. The evidence is too voluminous to be stated in detail, and we shall only give the conclusions which in our opinion may properly be drawn from it.

The appellant was a corporation organized as alleged in the bill, for the purpose of insuring the lives of members of the order of Odd Fellows, and all members of the order not over sixty years of age, who could pass the required medical examination, might, if accepted, become members of the association and entitled to its benefits. Applications for membership were to be made upon printed forms, furnished, accompanied by the fee and the certificate of a competent medical examiner, and were accepted when approved by the medical director, or in his absence by one of the consulting medical directors, and not otherwise, except upon objections made by the president or secretary, in which case the application should be referred to the board of managers. If the application was rejected, the secretary should cause the fee to be returned to the applicant; if accepted, he should issue a certificate of membership. One having become a member was bound to pay certain assessments upon the death of other members, and thus the fund was provided for the payment of the insurance in all cases. The deceased Conway was a member of the order, and was induced by Squires, a solicitor of the association, to make an application and pass an examination.

Not having the money, he gave Squires his note, payable fifteen days after date, for the amount of the fee and the charge of the medical examiner. There is some conflict in the testimony as to the object and understanding of the parties in the making of this note. The agent, Squires, says that the understanding was that he was to hold the application till the note was paid, and not send it forward without the money; that it

was not considered as a payment, and unless the money was paid nothing further was to be done; that he gave Conway a receipt stating that he had received from him the said application and the note for the fee, the application to be forwarded to the company with the fee when paid, which fee was to be returned if the certificate was refused. He states that Conway understood that the application was subject to approval, and that he knew the witness had no power to make a contract for insurance, and that as a matter of fact he had no such power, his only function being to solicit and receive applications and forward the same to the appellant for approval. There is considerable testimony as to the statements of the agent, made after the transaction, to the effect that he considered the deceased insured when he took the note; that the note was taken for the first premium and that he had given a receipt therefor which he wished to get back, and the like. Squire denies most of this in his testimony. What Squires said at the time he was engaged in the matter of receiving the application was a part of the *res gestœ*, and was competent evidence; but what he said afterward in casual conversations with various persons, would not bind his principal, and could have been competent only by way of impeachment after laying the proper foundation. 1 Gr. Ev. 113 and 114.

The deceased Conway was a railroad employe, and expected to receive on the next pay-day a sum out of which to meet this note; but he lost his life by an accident on the road before that day came, and the note was never paid. Squires held the application and the note until he heard of the death of Conway, which occurred some ten days after the making of the application and the note, and then forwarded the application to the company, by whom it was, of course, rejected. Afterward the amount of the note was tendered to Squires on behalf of the complainant, but was not accepted. The central and controlling question in the law is whether there was a valid contract of insurance. Was Conway, by virtue of the transaction between him and Squires, entitled as a matter of right to a certificate of membership, and could he have enforced that right had he lived?

This association was in effect a mutual insurance company. It pursued the course usual in such companies in reference to the taking of risks, required a medical examination upon all the points usually deemed necessary for life insurance, and the certificate of membership, or policy of insurance, was issuable only when the application was approved by the medical director, or, in case of objection by the president or secretary, by the board of managers. The application in such cases is a mere proposal, and until it is accepted there can be no contract, for until that time the minds of the parties have not met. There is simply an offer on one side which may be accepted or rejected by the other. There must be a meeting of the minds of the parties in all cases as to the whole subject and the substantial conditions of the whole contract, or there is obviously no contract. Bliss on Insurance, 195, 196; Flanders on Insurance, 109; Phillips on Insurance, Chap. 1. It is insisted here that there was a valid contract with the agent, and it is important to inquire whether the agent had power to make such a contract. Life-insurance agents are ordinarily only authorized to receive and forward applications for the approval of the company. Bliss on Insurance, 215. Yet such agents may be authorized to make valid contracts which will be binding on their principals.

It is apparent in this case that the agent had no such power, and even if he assumed it, the defendant would not be liable unless he had been held out as a general agent and the circumstances were such as to warrant the deceased in supposing he possessed the power so assumed. But we think the deceased had no such warrant. The usual course of business in life insurance and the powers ordinarily given to such agents, he is presumed to have known. It would be unreasonable to suppose that he had an understanding of the matter which would be variant from the ordinary course in such affairs, or that there was a contract between him and the agent different from that which was ordinarily competent to be made. We must therefore presume that they understood the transaction as it would ordinarily appear, in view of the powers usually possessed by such agents and the usual mode of transacting such business,

and it would necessarily follow that the application was a mere proposal and nothing more, which might or might not be accepted by the company. This is aside from the evidence of the agent and the language of the receipt which he says he gave, wherein it was expressly stated, that if the application was refused, the money would be refunded. Much stress is laid by counsel upon the use of the words, " this contract," and " this agreement" in the application, but we think the argument thus drawn is more specious than sound,

It is apparent that these terms refer to the contract proposed —the contract that was in contemplation; for it is obvious, this application was not a contract, and was merely an offer or proposal preliminary to a possible contract. If it is a contract presently binding upon the company, it must be so by reason of some act or intimation by the company, that upon the receipt of such an application filled up and containing all the various statements and answers therein set forth, a policy would issue. Yet this is not reasonable. How could it be possible— consistent with the ordinary mode of doing business—that the company should know in advance that the numerous inquiries would elicit such information as that the risk would be acceptable? Yet according to the view urged by counsel, it was immaterial what those answers were, and the contract was complete upon the delivery of the application to the agent, the company having no power to reject, and being bound to issue the policy.

The application contains the statement that the membership fee must in all cases accompany it, and this is consistent with the version given by the agent, that he was to hold it until the note was paid; and this is strengthened by the fact that he did hold it until he heard of the death of Conway. An argument is based upon the fact that the printed form for application now in use, contains the express statement that said contract shall not be binding until the payment of the fee and approval by the medical director. This is but putting in written words what was clearly imported and inferable from the whole transaction, and adds nothing to the legal effect of what was already done and written. Many authorities have been cited on both

sides which we have attentively considered, but it would unduly prolong this opinion and serve no useful purpose to discuss them all in detail, as we think the legal conclusions to be drawn from them, so far as applicable to this case, have been stated. The decree is reversed and the cause remanded.

Reversed.