Bentley Kassal, J.
This action is to recover life insurance proceeds on the life of plaintiff’s wife, who died two days after plaintiff had applied for insurance covering his wife, his daughter and himself. The basis of the claim is a “ Temporary *206 Insurance Agreement ”, embodied in the receipt given to plaintiff by defendant’s agent. Defendant denies liability, on the ground that the agreement never became effective because, contrary to the agreement, (1) the required one month’s premium had not been fully paid at the time of the application,
(2) the deceased had not undergone the medical examination required under company rules for her age and type of policy and
(3) neither of these conditions was or could have been modified or waived by the company’s agent, as expressly stated on the receipt and the application.
There is no claim by the defendant of any fraud or misrepresentation or of an improper signature on the deceased’s application.
The case was tried before a jury and, pursuant to CPLR 4111, I directed that the jury return a special verdict on stipulated questions, which the parties had mutually prepared for submission.
Briefly, the facts are these: At plaintiff’s request, an agent from defendant’s local office went to his home and, that evening, three insurance applications were signed. Regarding the wife’s policy, the subject of this action, plaintiff initially asked for coverage in the amount of $2,000 on a 20-year payment basis (which did not require a medical examination), but, relying upon the agent’s advice, he decided upon a $5,000 policy on a whole life basis (which did require a medical examination). All three applications were filled out by the agent from information supplied by plaintiff and his daughter. Plaintiff and his daughter testified that the deceased was upstairs and signed her own application, but the jury found otherwise.
The agent testified that he requested full quarterly premiums “ somewhere around $99 ” for all three policies, but after a brief discussion of plaintiff’s financial position, the agent asked, “ Would $30 be all right? ” and continued, “ Fine, I’ll put $10 on each application. ’ ’ When asked, ‘ ‘ Did you tell him at any time you wanted more than $30? ” the agent answered, “No.”
The agent testified he then stated that a medical examination was required for the wife, by the rules in the company’s life and annuity rate book, his ‘ ‘ bible ’ ’, because of the $5,000 amount at her age of 48 years. This was denied by plaintiff and his daughter, who claimed the agent said no medical examination was required for any of them. The jury made a finding of fact that the agent had not “told Mr. Anderson that there *207 would be no life insurance coverage on Agnes Anderson’s life until she had a medical examination. ”
The jury found that three receipts were issued to plaintiff, except that no figure was inserted next to the words “ Amount Received Dollars Although the plaintiff did not retain the receipt forms, he did acknowledge he had received some papers but did not know if they were receipts.
The crux of the case is the effectiveness of this one-page printed form, consisting of the receipt and temporary insurance agreement. Apparently, the language of this type of instrument has not been interpreted by the courts, although differently worded conditional binders have been the subject of litigation in this and other jurisdictions. (See Allen v. Metropolitan Life Ins. Co., 44 N. J. 294.)
The top part of defendant’s form is entitled “Receipt” and in bold type reads: “ Important. This receipt does not provide any coverage unless the required payment is made. Moreover, if a physical examination is required, no coverage (except against accidental death) is provided until such examination has been completed.”
The middle part of the form, enclosed in a box, is entitled “Temporary Insurance Agreement ”. It provides for immediate insurance coverage under certain conditions, one of which reads as follows: “A. Death Benefit. If the amount received is at least equal to one monthly premium on the policy applied for and * * # the company will pay a Temporary Insurance benefit ”.
The next section (B) of the temporary insurance agreement defines the term of the temporary insurance as beginning “ on the date of this Receipt except that, if a medical examination of the Proposed Insured is required by the Company rules, it will begin upon the completion of such examination.”
The last part of the agreement provides: “ C. Agent’s Authority. No agent or other Company representative is authorized to make any statement changing the terms and conditions of this Agreement and of this Receipt, and any such statement will not bind the Company.”
At the very bottom of this form, separated from the above, is the following clause: “ If the amount received is less than one monthly premium on the policy applied for, the Temporary Insurance Agreement above will not apply, and no coverage of any.type or kind will be provided under this Receipt.”
With the exception of item C, none of these terms are contained in the application itself, which incidentally is the only document *208 that the applicant signs or might examine before he pays the first premium.
I. SUFFICIENCY- OF PAYMENT
An analysis of the receipt/agreement discloses some critical features which call for careful scrutiny. Although the receipt states in general terms that there is no coverage unless the required payment is made, there is nothing in the receipt which states the actual amount in dollars and cents. The agreement portion contains a similar stipulation and it, too, is silent as to the specific amount. Moreover, this receipt (signed only by the agent) was not delivered to plaintiff until after the transaction had been completed.
In fact, the total monthly premium for the package of three policies was $33.14, and $30 was paid to and accepted by the agent, without qualification, further demand, or disclaimer of coverage. Undoubtedly, if plaintiff had had knowledge from the receipt or the agent of noncoverage as a consequence of his failure to pay the full sum, he would have paid the three additional dollars. The responsibility for advising him of the amount of the monthly premium and of the necessity for payment as a condition of coverage properly remains with the insurance company.
Therefore, defendant is estopped from asserting this defense, since it accepted payment and failed to fulfill its duty to warn plaintiff of the results of his act.
II. REQUIREMENT OF A MEDICAL EXAMINATION
As stated, the jury made the specific finding that the agent had not informed plaintiff that a physical examination of his wife was required, and the receipt itself contains no indication as to whether an examination is necessary for the particular applicant (see par. B of agreement). Of the three applications made, apparently the only policy requiring a medical was the wife’s.
Since the receipt itself is not self-explanatory and the agent did not inform him of the necessity for the examination, are we to charge a layman with the responsibility for examining the company’s rules contained in a two-inch-thick book with hundreds of rules and complicated tables ? Either the agent must notify him of this fact in explicit terms or the agreement must be so clear that there is no misunderstanding.
III. APPARENT AUTHORITY OF AGENT
Defendant contends that' the restriction contained in the receipt, the application, and the agent’s appointment papers,
*209 prohibiting agents from changing any terms of any insurance agreement, is binding upon plaintiff and bars recovery. Since the certificate of appointment is an agreement between the company and its agent, of which the applicant had no knowledge, it has no legal effect in this case. (Forward v. Continental Ins. Co., 142 N. Y. 382, 389.) But we must presume that the applicant had knowledge of this restriction, as it is in the executed application. However, there is no basis for finding that plaintiff knew or had reason to know that the agent was in fact changing the terms of the insurance agreement in any way when — after accepting an inadequate premium and failing to give notice of the required medical examination — he expressly informed plaintiff, or at least led him to believe, that the whole family was covered.
With regard to these two conditions, the important point is that only the agent knows the extrinsic facts which render the agreement inoperative. (Bank of Batavia v. New York Lake Erie & Western R. R. Co., 106 N. Y. 195.)
This is not to say that such restriction on the agent’s authority never applies. If, for example, the agent had said,11 The money you have paid is $3 short of the monthly premium, but you’re covered anyway,” then the situation would be different. (See Madsen v. Prudential Ins. Co., 35 N. Y. S. 2d 607.)
corrcLusiorr
An insurance agreement is not an ordinary contract, since it is a complex document, unilaterally prepared, and rarely fully understood by the insured. The parties do not enter the transaction on an equal level, in that the company and its trained agents are experts while the applicant seldom is. These facts must be recognized by a court and their significance cannot be subordinated to strict legal considerations.
A temporary agreement or conditional receipt tends to encourage the feeling of being insured and thereby a deception may unwittingly be practiced, even absent any positive misconduct by the agent. As stated in Prudential Ins. Co. of America v. Lamme (83 Nev. 146, 149): “We suggest only that if nothing is said about the complicated and legalistic phrasing of the receipt, and the agent accepts an application for insurance together with the first premium payment, the applicant has reason to. believe he is insured. Otherwise, he is deceived.” (See, also, Steelnack v. Knights Life Ins. Co. of Amer., 423 Pa. 205.)
The test to be employed is the understanding the ordinary man has when he pays his premium. (Gaunt v. John Hancock *210 Mut. Life Ins. Co., 160 F. 2d 599 [2d Cir., 19471, cert. den. 331 U. S. 849.)
In order for the insurance company to establish noncoverage by virtue of its printed agreement, it has the. burden of showing that the agent fully advised the applicant or that the language in the agreement or receipt was explicit in its application to this particular policy and that the applicant had read it.
Accordingly, defendant’s motion to dismiss the complaint, made at the end of plaintiff’s case, and renewed at the end of the entire case, and its motion for a directed verdict in its favor are all denied. Defendant’s motion to set aside the jury finding as to question No. 4 in the special verdict, as not being sustained by the evidence, is likewise denied.
Judgment shall be entered in favor of the plaintiff for the sum of $5,000, with interest from April 1, 1970, costs and disbursements.