LOREN E. REYNOLDS *et al.*, Plaintiffs-Appellants, *v.* GUARANTEE RESERVE LIFE INSURANCE COMPANY, Defendant-Appellee.

Fifth District   No. 76-285

Opinion filed December 30, 1976.

Hanagan & Dousman, of Mt. Vernon, for appellants.

Craig & Craig, of Mt. Vernon, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The plaintiffs, Loren E. Reynolds and Josephine Reynolds, brought an action to compel the defendant, Guarantee Reserve Life Insurance Company, to issue and deliver to the plaintiffs two policies of insurance which had been applied for by, but not issued to, the plaintiffs' deceased son, Mark, prior to his death. The plaintiffs and the defendant both made motions for summary judgment. The court denied the motion of the plaintiffs and granted the motion of defendant and entered judgment in defendant's favor. The plaintiffs appeal.

At issue here is whether an insurance company can, after accepting the first premium from the applicant and finding him to be an insurable risk, reject the applications for insurance and refuse to issue and deliver policies because of the applicant's death prior to the issuance of the policies. Attending the issue is the fact that the applications for the policies and receipt for the initial premium payments state that no policy will be in effect until either "delivered," "issued by the company," or "accepted" by the applicant. We find that the terms of the agreement must control; therefore, the company may reject the application.

The deceased son of the plaintiffs, Mark Reynolds, executed applications for a life insurance policy and a disability insurance policy with the defendant on September 26, 1974. The defendant's authorized agent with whom Mark Reynolds dealt was John C. Drew. At this time, Mark Reynolds delivered to John Drew a check in the amount of $29.25 which represented one month's premium on both policies he applied for. Mark named the plaintiffs as policy beneficiaries in the applications. The applications which Mark signed provide, in pertinent part:

"Disability Application

I also agree that the insurance will not take effect until (1) the application is approved and accepted by the Company at its Home Office, (2) the policy *is delivered* while the health of each proposed covered person and all other conditions remain as described in this application, and (3) the first premium has been paid in full." (Emphasis added.)

"Life Application

The Applicant also agrees that any policy *issued* hereon shall take effect on the policy date *upon his acceptance* thereof and the payment of the first premium (except as provided in the conditional receipt if one is issued to him)." (Emphasis added.)

The receipt that Mark Reynolds received in exchange for his check for premiums on the proposed policies states:

"No insurance shall take effect and no liability shall exist *unless and until* the application is approved by the Company and a *policy is issued (a) during the lifetime* and good health of all persons proposed for coverage under a life policy or (b) *while the health* and occupations of all persons proposed for a health policy *are as described in this application,* in which case the policy shall be deemed to take effect on the policy date thereof.

If the company declines to issue a policy, or issues a policy other than as applied for, which is not accepted upon delivery, the amount receipted above will be refunded by the company upon surrender of this receipt." (Emphasis added.)

The affidavit of John Drew, which was attached to defendant's motion for summary judgment, states that the affiant informed Mark Reynolds that no insurance would be in effect until such time as the company had issued the policies and they had been delivered to Mr. Reynolds. Mr. Drew's answers to questions presented in his pretrial deposition reveal that he told Mark Reynolds that the policies would be effective when they were issued but he could not remember if he told him that they must be delivered to him before they became effective. John Drew took the applications and check for the premiums to his regional supervisor and the applications and check were forwarded to the home office in Hammond, Indiana. The check was deposited in the defendant's suspense account.

The applications received underwriting approval by defendant company as presenting an acceptable risk on October 18, 1974. On October 22, 1974, Mark Reynolds was killed in a mine accident at Old Ben Mine No. 26 at Sesser, Illinois. The news of his death was received at the home office of the defendant before final clerical steps prior to the typing of the policies had begun. On October 23, 1974, Lee C. Horn, chief underwriter for the defendant, wrote the plaintiffs consoling them for their loss and informing them that no policy of insurance was in effect prior to Mark's death. The defendant's check for the amount the deceased had paid was enclosed in the letter. Mr. Horn in his pretrial deposition stated that the "policy date" or date put in the policy is usually the date of final risk evaluation (underwriting approval) and that normally premiums are considered "earned premium" from that date forward.

■■ An application for insurance is a mere offer; it creates no rights and imposes no duty on the insurer. (*Wallace v. Prudential Insurance Co. of America,* 12 Ill. App. 3d 623, 299 N.E.2d 344; *Metropolitan Life Ins. Co. v. Whitler* (7th Cir. 1949), 172 F.2d 631.) The parties to an application for insurance are competent to make any provision for the effective date

of insurance. (*Lentin v. Continental Assurance Co.*, 412 Ill. 158, 105 N.E.2d 735; *Union Bank v. Metropolitan Life Insurance Co.*, 266 Ill. App. 345.) Such provision may be the issuance of the policy, the date of delivery of the policy or the date of acceptance of the policy by the applicant and is binding and not contrary to public policy. (*Union Bank v. Metropolitan Life Insurance Co.; Ellis v. State Mutual Life Assurance Co.*, 206 Ill. App. 226.) Where the application and receipt in connection with an application for insurance provide no insurance will be effective until a policy is issued or delivered, no contract of insurance is created where the applicant dies prior to the time such conditions are performed. *Covenant Mutual Benefit Association v. Conway*, 10 Ill. App. 348; *Wallace v. Prudential Insurance Co. of America.*

■■ Applying the principles above to the applications, receipt and facts in the instant case, it is apparent that no contract of insurance was in effect prior to the death of plaintiffs' son Mark. The applications constituted mere offers; the conditions precedent to the insurance policies taking effect had not been performed prior to Mark's death. There is some ambiguity created as to effective policy dates since the applications' conditions of "delivery," and "acceptance" in the life and disability applications respectively conflict with the condition of "issuance" in the receipt. However, even resolving this ambiguity in favor of the insured, the condition is not met as no policy for Mark Reynolds was ever issued or delivered.

■■ The plaintiffs contend that the defendant cannot be allowed to refuse to issue a policy for the sole reason that the proposed insured died before the policy was issued, when it has collected the premium at the time of completion of the application, and the application was given underwriting approval and the policy would have been issued in the normal course of its business. The plaintiffs cite cases from four other jurisdictions for this proposition. (*Gaunt v. John Hancock Mut. Life Ins. Co.* (2d Cir. 1947), 160 F.2d 599, *cert. denied*, 331 U.S. 849, 91 L. Ed. 1858, 67 S. Ct. 1736; *Wright v. Pilot Life Insurance Co.* (W.D.Va. 1966), 254 F. Supp. 1018, *rev'd and rem.* (4th Cir. 1967), 379 F.2d 409; *Prudential Ins. Co. of America v. Jenkins* (1942), 290 Ky. 802, 162 S.W.2d 791; *American Life Ins. Co. v. Hutcheson* (6th Cir. 1940), 109 F.2d 424, *cert. denied*, 310 U.S. 625, 84 L. Ed. 1397, 60 S. Ct. 898.) However, all of these cases involve agreements contained in the applications and receipts regarding times or events when the policies in question would become effective that are totally different from the agreement we have in the instant case. The reasoning of those must be limited to the facts presented in them; it is not persuasive or applicable here.

The cases cited by plaintiffs all involved language in their applications or receipts, or both, which were of a nature usually referred to as creating

"conditional receipts" or "conditional binders." That type of language follows this general pattern: If payment is made with the application, coverage starts on the date of the application or from the time of a medical examination or some other similar date, provided the company approves the application or is satisfied that the applicant met the company's medical requirements upon such date; if payment is not made with the application, no insurance is in effect until a later date, usually issuance or delivery of the policy. The courts' reasoning in these cases proceeds along these lines. The general impression given to the layman from these provisions is that he is covered from the earlier date if he pays at the time of application and not covered until the later date if he does not pay at that time. The applicant is entitled to rely on this reasonable impression and need not seek any other protection. If he is injured or killed after he has met the objective requirements of the insurer, the insurer is estopped from arbitrarily rejecting the application so as to deny coverage on the "technical" requirement of a condition precedent of acceptance, approval or satisfaction. But where, as here, the language is clear that no coverage exists until either issuance or delivery and there is no language inducing the belief of immediate or nearly immediate coverage and reliance thereon, the reasoning and rule is neither persuasive nor applicable.

■■ ■ The plaintiffs further contend that the defendant should be estopped from asserting as a defense to this action the language of the applications and receipt which establish the conditions which are required to be performed before the policy of insurance becomes effective because the company itself disregards these terms. The plaintiffs draw the court's attention to the testimony of defendant's chief underwriter, Lee C. Horn. In his pretrial deposition, as already noted, Mr. Horn stated that the company's usual practice is to make the date of underwriting approval the policy date or the "effective date" for purposes of charging the premiums. We cannot accept the plaintiffs' argument on this point. The plaintiffs have failed to prove an essential element necessary for an estoppel, reliance. One claiming the benefit of estoppel must have relied upon the acts or representations which are inconsistent with the position the adversary is maintaining at trial. (*Prudential Savings & Loan Association v. Nadler*, 37 Ill. App. 3d 168, 345 N.E.2d 782; *Baldwin v. Baldwin*, 21 Ill. App. 3d 380, 315 N.E.2d 649.) No estoppel is operative where the person claiming the benefit of the estoppel had no knowledge of the acts done which are claimed to result in an estoppel since no reliance is possible in such a situation. (*DeProft v. Heydecker*, 297 Ill. 541, 131 N.E. 114; 18 Ill. L. & Prac. *Estoppel* §23, at 86 (1956); *cf. DuMond v. City of Mattoon*, 60 Ill. App. 2d 83, 207 N.E.2d 320.) It is apparent from the record that plaintiffs' deceased son never knew of the

acts of the company which plaintiffs assert create an estoppel. The plaintiffs themselves did not become aware of the practice until some time after the commencement of this action. Accordingly, no reliance is established in this instance. To the contrary, the language of the applications and receipt and the testimony of agent John Drew establish that Mark Reynolds could only believe that he would not be insured until, at the earliest, the policies were issued by the company.

■■ The plaintiffs' final contention is that it is unconscionable for the defendant to take a check from the proposed insured, cash it for its own use and refuse to provide any coverage to the proposed insured in return. There is no merit to this contention. It is not conduct that is harsh or shocking to the conscience for an insurance company to accept prepayment of premiums for proposed policies of insurance which clearly will not provide coverage until issued or delivered where the receipt for that prepayment expressly contains a provision that if the company declines to issue a policy the amount received will be refunded. Only hindsight in an unusual and unfortunate situation makes it appear so. The language of the agreement is controlling. The plaintiffs cite three cases from two other jurisdictions to support their contention. The facts involved there are so different as to render their results and reasoning inapplicable here.

For the foregoing reasons, the judgment of the circuit court of Franklin County granting defendant's motion for summary judgment is affirmed.

Affirmed.

CARTER, P. J., and KARNS, J., concur.