ELAINE QUARLES, Plaintiff-Appellee and Cross-Appellant, *v.* NATIONWIDE INSURANCE COMPANY *et al.*, Defendants-Appellants and Cross-Appellees.

First District (2nd Division)   No. 77-1336

Opinion filed October 31, 1978.

456

Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Edward H. Nielsen, Joseph B. Lederleitner, and Robert Marc Chemers, of counsel), for appellants.

Raymond P. Concannon, of Miller and Concannon, of Chicago, for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This appeal arises out of an action brought by Elaine Quarles (plaintiff) as beneficiary of a $25,000 life insurance contract allegedly entered into by defendant Nationwide Insurance Company (Nationwide) through its agent, defendant Robbie Penrod (Penrod). The case proceeded to jury trial on plaintiff's second amended complaint in three counts, alleging breach of contract and negligence and seeking a declaratory judgment, respectively. At the conclusion of the evidence, the trial court granted plaintiff's motion for directed verdict as to Nationwide's liability for breach of contract. The court also entered a

default judgment against Penrod for his failure to appear at trial. The jury thereupon assessed damages against defendants in the amount of $25,000. Defendants appeal from the granting of plaintiff's motion for directed verdict and from the denial of Nationwide's motion for directed verdict. Defendants also appeal from the denial of their motion for a continuance and from the entry of a default judgment against Penrod. Plaintiff cross-appeals from the denial of her motion for directed verdict as to defendants' negligence, from the dismissal of her declaratory judgment action, and from the finding of the court that Nationwide's refusal to pay the claim was not vexatious or without reasonable cause.

On January 3, 1974, defendant Penrod, representing Nationwide, came to plaintiff's house at her request to discuss the possible purchase of insurance on the life of her husband, Jerrell Quarles, who was then 33 years old and in good health. Plaintiff decided to purchase a $25,000 policy. Penrod then asked plaintiff a series of questions from Nationwide's insurance application form, checking off the appropriate boxes as she replied. Plaintiff gave Penrod a check, which was later cashed by Nationwide, in the amount of the first quarterly premium, $25.22. Penrod gave plaintiff a receipt and left with her, for her husband to sign, a copy of the completed application including a form authorizing Nationwide to obtain the applicant's medical records. Plaintiff testified that Penrod told her to leave the signed application in the mailbox for him to pick up the next day, which she did.

The application signed by the proposed insured contained, *inter alia*, the following provisions:

"2. This application, the reports of medical examinations required by the Company's published underwriting rules because of the age of the insured or the amount of insurance applied for and any policy issued in reliance thereon shall constitute the entire contract of insurance.* * *

3. No agent or other person except the President, Secretary or Treasurer has the power to make or modify any contract or waive any of the Company's rights or requirements, and then only in writing.

4. The insurance hereby applied for shall not be considered in force unless a policy shall have been issued by the Company, received and accepted by me, and the first full premium paid thereon during the lifetime and continued insurability of the Proposed Insured * * *; except that if the first full premium * * * is paid to an authorized agent of the Company on the date this application is signed and the receipt attached to this application * * * is delivered and if the following acts are completed, (a) receipt by the Company of a fully completed applications which

includes fully completed medical examinations, and (b) completion of all further investigation and the Company is satisfied that the Proposed Insured * * * is insurable and qualified under the Company's rules, limits and standards on the plan and for the amount applied for and at the premium specified herein, the said insurance shall take effect and be in force from the date of the last medical examination, or if no medical examination is required, on the application date * * *."

The application also contained, *inter alia,* the following two questions, both of which had been checked "Yes" by Penrod:

"5. a. Have you been informed that medical examination(s) is required for this application?

b. Do you understand that the Company has the right to require medical examination(s) in which event this application is not complete until such medical examination(s) is made?"

The receipt which Penrod detached from the application in exchange for plaintiff's check in the amount of the first full premium bore the following legend:

"CONDITIONAL FIRST LIFE PREMIUM RECEIPT: NO INSURANCE WILL BECOME EFFECTIVE PRIOR TO POLICY DELIVERY UNLESS THE ACTS REQUIRED BY THIS RECEIPT ARE COMPLETED. NO AGENT OF THE COMPANY IS AUTHORIZED TO CHANGE ANY ACT REQUIRED."

The receipt then contained a paragraph identical to paragraph 4 of the application, set out above, except that the reference to medical examinations in subparagraph (a) was qualified by the phrase "if any required by the Company's published underwriting rules * * *." The receipt also provided: "If the application is declined, the amount evidenced by this receipt shall be refunded."

On the back of the receipt the following language appeared:

"IMPORTANT

The Company reserves the right to require a medical examination. Until you can provide proof that you are insurable, the Company provides no insurance.

If you are requested to have an examination, don't delay. Make arrangements promptly. There is no insurance until a satisfactory medical examination has been made and all the conditions of this receipt are completed."

Plaintiff testified that she read the language on the back of the receipt and understood it to mean that Nationwide could require a medical examination, but had not done so. Plaintiff further testified that neither she nor her husband ever read the front part of the receipt or any part of the

application. She also testified that Penrod did not ask her either of the questions 5a and 5b set out above, nor did he inform her that a medical examination was required. Instead, plaintiff testified, Penrod told her that there would be no need for a medical examination if Nationwide could get the medical records from a clinic her husband had been attending, and plaintiff's husband signed an authorization permitting Nationwide to obtain the records. Plaintiff also testified that she asked Penrod whether they were now insured, and he replied, " 'Yes, well, I'm taking your check.' "

Plaintiff then testified that she never saw or heard from Penrod or anyone from Nationwide until, four days after her husband's death from a fall on April 6, 1974, Penrod dropped off a Nationwide check dated February 27, 1974, in the amount of the premium plaintiff had paid. No medical examination had ever been submitted nor had any policy been issued. Plaintiff filed this action when her claim against Nationwide was denied.

Mr. Emil Deiter, a Nationwide sales manager, was called by plaintiff under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60). Mr. Deiter described Nationwide's application forms and the procedure by which they are filled out by the agent. He testified that applications can be submitted with or without a medical examination being required, depending on the age of the applicant and the amount of insurance sought. He further testified that the instruction portion of the application, which was not part of the copy of the application left with plaintiff and was never shown to her or her husband, contained a table which provided that a medical examination was required if the applicant was between the ages of 31 and 35 and was applying for more than $20,000 of insurance, as was plaintiff's husband. Mr. Deiter also testified that Penrod had not filled out a question on the portion of the application entitled "Agent's Certificate" which was headed "ANSWER IF MEDICAL EXAMINATION IS REQUIRED FOR PROPOSED INSURED," although he also testified that that question was not invariably filled out by Nationwide's agents.

Mr. John Kirchhofer, another Nationwide employee, was also called as an adverse witness by plaintiff. Mr. Kirchhofer reiterated that medical examinations may or may not be required and that an examination would have been required of plaintiff's husband. He further testified that an applicant could have no way of knowing whether or not he was required to have a medical examination and that, therefore, this information would have to come from the agent.

Plaintiff had also indicated a desire to call defendant Penrod as an adverse witness under section 60. Pursuant to this end, on March 19, 1976, plaintiff served upon Nationwide a notice to produce its agent Penrod at

trial, under Supreme Court Rule 237(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 237(b)), which provides in pertinent part:

> "The appearance at the trial of a party or a person who at the time of the trial is an officer, director, or employee of a party may be required by serving the party with a notice designating the person who is required to appear."

Upon discovering that Penrod was no longer a Nationwide employee and had moved to Florida, plaintiff added Penrod as a party and served upon Penrod a similar Rule 237 notice to produce himself at trial for examination by plaintiff. On May 12, 1976, Penrod, represented by the same counsel as Nationwide, entered his appearance in the action and filed an answer identical to Nationwide's.

After several motions for continuances by defendants had been made and granted, the case was assigned to a trial judge, but on April 13, 1977, defendants again moved for a continuance on the ground that Penrod no longer worked for Nationwide and now lived in Florida. The motion was granted and the case sent back to the assignment judge. The case was again set for trial upon answer of ready by counsel, and on May 2, 1977, the case was again assigned to a trial judge. Plaintiff and defendants both answered ready for trial on May 3, 1977, although counsel for the defendants knew that defendant Penrod was not in Chicago, yet also knew that Penrod had been served with a notice to appear and testify.

On May 3, 1977, a jury was selected and impaneled, opening statements were heard, and a witness was examined by both sides. It was not until the morning of May 4, 1977, that counsel for the defendants made a motion for a continuance. Counsel informed the court that Penrod was living in Florida and had been waiting for the case to come to trial, when he apparently decided to drive to Chicago. Counsel informed the court that he had been unable to reach Penrod but had talked with several of Penrod's relatives who said that Penrod was en route in a trailer and would probably reach Chicago at approximately noon the following day. Counsel therefore asked for a continuance until the afternoon of the following day, May 5, 1977.

Noting that counsel had not spoken to his client and did not know his whereabouts, the court denied the motion, whereupon defense counsel moved for a mistrial on the grounds that the denial of a continuance would irreparably damage Nationwide's case and constitute a denial of due process. The court replied:

> "From what you have said, counsel, you haven't spoken to your client and you really can't guarantee that he's going to be here in Court tomorrow. You just have second-, third-, and fourth-hand information that he is somewhere between here and Florida

pulling a trailer and this jury is on its last three days and it will have to be excused and discharged for having completed two weeks of service and I cannot run the risk of your man showing up tomorrow late in the afternoon or Friday and holding the jury over and so the order remains as it was. Your motion for a mis-trial is denied and, of course, this Court finds no violation of any constitutional guarantee."

After plaintiff had examined another witness, plaintiff made a motion, as provided in Rule 237 and pursuant to Supreme Court Rule 219(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 219(c)), that sanctions be entered against Penrod for his failure to comply with the notice to appear. Specifically, plaintiff requested that a judgment by default be entered against Penrod, as provided in Rule 219(c)(v). While noting that no one knew where Penrod was yet, the court took the motion under advisement.

After examining a third witness, plaintiff renewed the motion for sanctions and informed the court that plaintiff's case was closed, subject to the production of Penrod. The court permitted defense counsel to make another attempt to locate Penrod and reported the following for the record:

"[T]he result is that neither [defense counsel] nor the Court is any better informed now than we were this morning, having no direct communications with the Defendant Penrod, nor do we know where he is or exactly what we can expect.

This being the case, the Court will sustain the motion of the Plaintiff for sanction, pursuant to Supreme Court Rule, and we'll enter a default judgment against Mr. Penrod. The jury will determine the size of the judgment."

After denying Nationwide's motion for a directed verdict, the trial court examined the insurance application form and found it to be "so muddled and cloudy * * * so confusing and complicated" that it would be unfair to allow the insurance company to hide behind its obscurity. At the close of the evidence, the court directed the jury to find Nationwide liable to plaintiff for breach of contract. The court then found Penrod in default for failing to appear and testify and further found that Nationwide was not guilty of vexatious delay in denying plaintiff's claim. The jury then assessed damages in the amount of the policy applied for, $25,000.

The first question for review is whether the trial court properly directed a verdict for plaintiff, finding as a matter of law that a contract of insurance existed. In our review we are guided by the standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, to the effect that verdicts ought to be directed only when all of the

evidence, viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.

■■ Defendants argue first that the issuance of a policy was a condition precedent to any insurance coverage, under the following terms of the application: "4. The insurance hereby applied for shall not be considered in force unless a policy shall have been issued by the Company * * *." In support, defendants cite *Reynolds v. Guarantee Reserve Life Insurance Co.* (5th Dist. 1976), 44 Ill. App. 3d 764, 358 N.E.2d 940, and *Wallace v. Prudential Insurance Co. of America* (5th Dist. 1973), 12 Ill. App. 3d 623, 299 N.E.2d 344, both of which involved applications containing language which made the issuance of a policy a condition precedent to any coverage. However, what defendants fail to point out is that the language of condition precedent in the application in the case at bar is followed by a lengthy series of clauses beginning with the words "except that," into which exception plaintiff argues her case falls. Accordingly, we turn now to a construction of that language, noting that any ambiguity therein must be construed in favor of the insured and against the insurer seeking to limit its liability. *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247; *Mosby v. Mutual Life Insurance Co.* (1950), 405 Ill. 599, 92 N.E.2d 103; *Goetze v. Franklin Life Insurance Co.* (2d Dist. 1975), 26 Ill. App. 3d 104, 324 N.E.2d 437.

■ The language of exception contemplates the fulfillment of four conditions, three of which are not in dispute here. These are, generally, payment of a premium, delivery of a receipt, and insurability. It is the fourth condition which defendants argue has not been met: "receipt by the Company of a fully completed application which includes fully completed medical examinations * * *." However, the application goes on to say that if these four conditions are met, "the said insurance shall take effect and be in force from the date of the last medical examination, or if no medical examination is required, on the application date* * *." The identical language as to effective date appears on the receipt, which similarly specifies as a condition "receipt by the Company of a fully completed application which includes fully completed medical examinations, *if any required* by the Company's published underwriting rules because of the age of the Insured or the amount of insurance applied for * * *." (Emphasis added.) The language on the back of the receipt similarly expresses the requirement of a medical examination in the conditional: "The Company reserves the right to require a medical examination. * * * If you are requested to have an examination, don't delay. * * * There is no insurance until a satisfactory medical examination has been made.* * *" In view of the ambiguous, conditional nature of this language, we cannot find that a medical examination was

required as a condition precedent to coverage by the terms of the application or the certificate.

■■ Defendants next argue that the fact that, under Nationwide's rules, a medical examination was required for applicants in the situation of plaintiff's husband, taken in conjunction with the clause in the application prohibiting agents from waiving any of the company's requirements, together operate to dispose of plaintiff's claim. We disagree. The uncontradicted testimony of Nationwide's own employee, Mr. Kirchhofer, is that a medical examination may or may not be required, that the applicant cannot be expected to know the company's rules, and that, therefore, the applicant can only know if a medical examination is required if the agent so informs him. As this is so commonly the case, it has been stated, and we are in agreement, that "[t]he better rule is that the applicant's failure to undergo a medical examination is no defense where he was not aware one was required." (12 Appleman, Insurance Law and Practice §7222, at 247 (1978 supp.).) While no cases from this State directly on point have been found, the weight of authority is in accord with this view. See, *e.g., Monumental Life Insurance Co. v. Hakey* (Ind. App. 1976), 354 N.E.2d 333; *Anderson v. Metropolitan Life Insurance Co.* (City Civ. Ct. 1972), 69 Misc. 2d 205, 329 N.Y.S. 2d 197, *aff'd* (App. Div. 1973), 75 Misc. 2d 1003, 349 N.Y.S. 2d 925; *Damm v. National Insurance Co. of America* (N.D. 1972), 200 N.W.2d 616; *Life & Casualty Insurance Co. v. Ventrees* (1958), 44 Tenn. App. 672, 318 S.W.2d 559. Contra, *Bobbit v. American National Insurance Co.* (Tex. Civ. App. 1967), 419 S.W.2d 919.

■■ Examining the record in the instant case, we find that the trial court's direction of a verdict for plaintiff is well supported by the evidence that neither plaintiff nor her husband was ever made aware that a medical examination was required. The unrebutted testimony is that agent Penrod told plaintiff that no examination was required. Also unrebutted is plaintiff's testimony that no one ever notified her or her husband to the contrary. In addition, Penrod failed to answer the question on his agent's certificate labeled "ANSWER IF MEDICAL EXAMINATION IS REQUIRED FOR PROPOSED INSURED," though there was some testimony to the effect that completion of this question was not mandatory. We also think it significant on this point that Nationwide's refund check was not delivered to plaintiff until after her husband's death and was dated February 27, 1974. Finally, as we have already found, neither the application nor the certificate unambiguously gave notice that a medical examination was required.

The only evidence in the record to suggest that plaintiff might have been informed of the medical examination requirement consists of the fact that questions 5a and 5b, set out above, were checked in the

affirmative on the application. However, we think this evidence is equivocal at best. Plaintiff's uncontradicted testimony is that those questions were never asked of her, and it is undisputed that Penrod filled in those answers and that neither plaintiff nor her husband ever read the application or saw those questions.

■■■ In view of the paucity and dubious probative value of the evidence in the record for defendants on this point, we believe it may fairly be said that all of the evidence, even viewed most favorably to defendants, so overwhelmingly supports plaintiff in her contention that neither she nor her husband was ever made aware of any medical examination requirement, that no contrary verdict based on this evidence could ever stand. Accordingly, we affirm the trial court's direction of a verdict for plaintiff as to Nationwide's liability for breach of contract. We also affirm the trial court in its finding that Nationwide's refusal to pay plaintiff's claim was not "vexatious and without reasonable cause" so as to result in an award of attorney's fees under section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 767). As a result of these rulings, we have no occasion to consider the other issues raised by plaintiff in her cross-appeal.

We next consider whether the action of the trial court was proper in denying defendants' motion for a continuance and in entering a default judgment against Penrod for his failure to appear and testify. Motions for continuance are governed by Supreme Court Rule 231 (Ill. Rev. Stat. 1977, ch. 110A, par. 231), which provides in pertinent part:

"(a) Absence of Material Evidence. If either party applies for a continuance of a cause on account of the absence of material evidence, the motion shall be supported by the affidavit of the party so applying or his authorized agent. The affidavit shall show (1) that due diligence has been used to obtain the evidence, or the want of time to obtain it; (2) of what particular fact or facts the evidence consists; (3) if the evidence consists of the testimony of a witness, his place of residence, or if his place of residence is not known, that due diligence has been used to ascertain it; and (4) that if further time is given the evidence can be procured.

\* \* \*

(f) Time for Motion. No motion for the continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay."

We find no indication that defense counsel satisfied the requirements of Rule 231. In moving for the delay, counsel offered no evidence that due diligence had been used to secure the presence of his client Penrod or that there was a reasonable certainty that Penrod could be produced within the time requested, nor did counsel make any offer of proof as to the facts

to which Penrod was expected to testify. Neither did defense counsel offer any excuse for answering ready, proceeding to trial, impaneling a jury, and allowing an entire day of trial testimony to take place before requesting a continuance.

■■ As we stated in *Schneider v. Seibutis* (1st Dist. 1972), 3 Ill. App. 3d 323, 279 N.E.2d 37:

> "A motion for a continuance * * * is addressed to the sound discretion of the trial judge. (*Jones v. Goodfriend* (1944), 323 Ill. App. 284, 55 N.E.2d 293.) Because of the potential inconvenience to the parties, the witnesses and the court, especially grave reasons for granting a delay must be given once a case has reached the trial stage. This is particularly true where previous continuances have been granted, both parties have declared themselves ready for trial, and the movant's opponent has concluded the presentation of his evidence." (3 Ill. App. 3d 323, 325-26.)

In addition to the factors militating against continuances just catalogued, the case at bar contained an important additional feature: it was in the process of being tried to a jury. In view of the uncertainty as to where Penrod was and when he might arrive, the trial court was justly concerned that a continuance in the midst of a jury trial would be unduly disruptive. We cannot find that its denial of the motion for continuance was an abuse of discretion.

Defendants also argue that the trial court erred in entering a default judgment against Penrod for his failure to appear and testify pursuant to notice served upon him under Supreme Court Rule 237 (Ill. Rev. Stat. 1977, ch. 110A, par. 237). Rule 237(b) provides in pertinent part:

> "Upon a failure to comply with the notice, the court may enter any order that is just, including any order provided for in Rule 219(c) that may be appropriate."

One of the sanctions specifically provided in Rule 219(c) is the entry of a default judgment against the offending party. (Ill. Rev. Stat. 1977, ch. 110A, par. 219(c)(v).) The particular sanction imposed rests largely within the trial court's discretion, the exercise of which will not be disturbed absent an abuse of discretion, and the burden is on the offending party to establish that his failure to comply was justified by extenuating circumstances. *Sanchez v. Phillips* (1st Dist. 1977), 46 Ill. App. 3d 430, 361 N.E.2d 36; *Savitch v. Allman* (3d Dist. 1975), 25 Ill. App. 3d 864, 323 N.E.2d 435; *Schwartz v. Moats* (4th Dist. 1971), 3 Ill. App. 3d 596, 277 N.E.2d 529.

■■ Under the circumstances of this case, we feel that the order entering a default judgment against Penrod at the close of the evidence was well within the discretion of the trial court. As this court said in *Sanchez v. Phillips* (1st Dist. 1977), 46 Ill. App. 3d 430, 435, 361 N.E.2d 36, "[u]nder our system of representative litigation, the general rule is that the client is

bound by the acts and omissions of his lawyer-agent." Defense counsel has offered no excuse whatsoever for answering ready and proceeding to trial in the absence of his client Penrod, knowing full well that he had been served with a notice to appear and testify. The entry of a default judgment is justified in the face of such deliberate and inexplicable disregard for the rules and the court. *Sanchez v. Phillips; Savitch v. Allman; In re Atwood's Estate* (1st Dist. 1968), 97 Ill. App. 2d 311, 240 N.E.2d 451. Compare *Serpe v. Yellow Cab Co.* (1st Dist. 1973), 10 Ill. App. 3d 1, 293 N.E.2d 742.

Thus, we cannot say that the trial court abused its discretion in denying defendants' motion for continuance and entering a default judgment against Penrod. Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DOWNING and PERLIN, JJ., concur.