MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., Plaintiff-Appellee, v. WILLIAM K. STORY, Defendant-Appellant.

First District (6th Division)   No. 1—89—3073

Opinion filed August 23, 1991.

Patrick J. Moran, of Hillside, for appellant.

Cantwell & Cantwell, of Chicago (Peter A. Cantwell and Stephen F. Boulton, of counsel), for appellee.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff-appellee Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch) sued below, seeking to recover damages for breach of a written contract. The trial judge entered a default judgment against defendant-appellant William K. Story (Story) for the failure of Story to appear at trial after Story received notice according to Supreme Court Rule 237 (107 Ill. 2d R. 237). Merrill Lynch subsequently filed a petition for attorney fees. After a hearing, the trial court granted Merrill Lynch fees in the amount of $6,500. Story appeals both the entry of default judgment against him and the award of attorney fees granted to Merrill Lynch.

Merrill Lynch filed the underlying complaint against Story on August 24, 1983, alleging that Story breached a standard option agreement between the parties, dated September 15, 1982. Merrill Lynch sought to recover from Story payment for purchases of securities which the agreement authorized. The agreement, entered into in Flor-

ida, provided that New York law would control disputes arising thereunder.

On May 5, 1989, Merrill Lynch filed a Rule 237 (107 Ill. 2d R. 237) notice upon Story which requested Story be "present in court for testimony as witness in this action." The week before the date of trial, counsel for Merrill Lynch telephoned counsel for Story. At that time, counsel for Story voiced no objection to the Rule 237 notice and confirmed that Story would be present at trial. On June 12, 1989, the case was set for trial before the Honorable John P. Tully. Story was not present. According to Story's counsel, Story was in Florida and was unable to appear. Story's counsel could not give the court a reason for his client's absence. The trial court offered to set the matter over until later in the afternoon, but when it became apparent that Story would not appear, the trial court indicated that he would enter a judgment of default against Story on the principal amount claimed by Merrill Lynch, and a jury was impanelled to hear the case on the issue of interest. Subsequently, an order was entered in favor of plaintiff and against defendant to include principal and interest, in the amount of $5,148.57. Story does not challenge the awarding of interest in any respect.

In accord with the June 12, 1989, order, Merrill Lynch's oral petition for attorney fees was continued. Merrill Lynch later filed a petition for attorney fees, which was supported by affidavit. After the petition was fully briefed, the trial court conducted hearings on the petition and awarded Merrill Lynch attorney fees in the amount of $6,500.

■ The first issue we address is whether the entry of the sanction of default pursuant to Rule 237 for the failure of Story to appear at trial was an abuse of the trial court's discretion.

Supreme Court Rule 237(b) provides in pertinent part:

> "The appearance at the trial of a party or a person who at the time of trial is an officer, director, or employee of a party, may be required by serving the party with a notice designating the person who is required to appear. *** Upon a failure to comply with the notice, the court may enter any order that is just, including any order provided for in Rule 219(c) that may be appropriate." (107 Ill. 2d R. 237(b).)

Illinois Supreme Court Rule 219(c) (107 Ill. 2d R. 219(c)(v)) specifically provides that the entry of a default judgment against an offending party or an order dismissing the offending party's action are authorized sanctions. As Merrill Lynch points out:

"The particular sanction imposed rests largely in the trial court's discretion, the exercise of which will not be disturbed absent an abuse of discretion, and the burden is on the offending party to establish that his failure to comply was justified by extenuating circumstances." *Quarles v. Nationwide Insurance Co.* (1978), 66 Ill. App. 3d 455, 465, 383 N.E.2d 1234.

In arguing that the trial court's action was an abuse of discretion in this case, Story relies primarily on the case of *Ryan v. Bening* (1978), 66 Ill. App. 3d 127, 383 N.E.2d 681. There, the court held that the entry of a default judgment in response to a defendant's failure to appear pursuant to Rule 237 was not an appropriate sanction in the absence of the plaintiff proving a *prima facie* case. Though the parties have not cited it, a similar situation was presented in the more recent case of *People ex rel. Hartigan v. Organization Service Corp.* (1986), 147 Ill. App. 3d 826, 498 N.E.2d 597. There, as in *Quarles*, the defendant had failed to show up at trial pursuant to notice under Rule 237. The court held as follows:

"One of the sanctions provided by section 219(c) is the entry of a default judgment against the offending party. [Citation.] We realize that where a defendant has appeared and placed in issue the allegations in the complaint, a trial court cannot enter a default judgment merely because defendant failed to appear at trial. Plaintiff must proceed to prove his claim as if defendant had been present to try the case. [Citing *Ryan*, 66 Ill. App. 3d at 131.] However, we believe that this condition has been satisfied in the instant case." *People ex rel. Hartigan v. Organization Service Corp.*, 147 Ill. App. 3d at 831.

■ *Ryan*, which appears to be the first case to apply the general "nonappearance at trial" rule in the Rule 237 sanctions scenario, cited a number of cases in support of its holding. None of these cases involved the levying of a statutorily permitted sanction. The legislature's mandate that the sanction of default be available as a result of noncompliance with Rule 237 is undercut by the application of the *Ryan* rule in situations where the plaintiff requires defendant's testimony to establish plaintiff's *prima facie* case. This is because the plaintiff could not prove a *prima facie* case without the defendant's presence, and, under the rule, a court cannot enter a default judgment until such is shown. Thus, a distinction between the entry of judgment as a sanction and the entry of default due to the simple failure to appear at trial appears warranted. It must be remembered that in the sanction scenario, the entry of judgment is premised upon the statutory grant of authority to ameliorate a party's noncompliance

with court orders and authority. In the Rule 219 noncompliance situation, which is somewhat analogous to the Rule 237 noncompliance situation, it has been observed that the legislative grant of power to enter judgment for violation of discovery rules is premised upon the presumption that the withholding of documentation or testimony is sufficient to establish liability. (See *Day v. Schoreck* (1975), 31 Ill. App. 3d 851, 853, 334 N.E.2d 864, citing *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 226 N.E.2d 6.) In our view, the presumption of liability, which validates the use of the default sanction, is present in Rule 237 cases as well.

■ Here, Story failed to show at trial despite the existence of the statutorily permitted sanction of default. Story had no excuse other than that he was "busy." At oral argument, counsel for Story argued that the trial court should have determined the necessity of Story's presence in the first instance. Yet Story never objected to the Rule 237 request (either upon receipt of the notice or during his telephone conference with Merrill Lynch's counsel the week before the day of trial). Rather, he left plaintiff's counsel with the impression that Story would be available for the presentation of plaintiff's case. Counsel for Merrill Lynch insisted, and the trial court expressly indicated belief, that Merrill Lynch needed Story's testimony. Thus, while we note the existence of the *Ryan* rule, we nonetheless hold that the entry of a default judgment against Story was within the trial court's discretion.

■ We next address the issue of whether Merrill Lynch was entitled to an award of attorney fees and costs under the agreement of the parties. Story contends that Merrill Lynch was not entitled to any attorney fees or costs. According to Story, Merrill Lynch is not entitled to attorney fees or costs because its claim was for breach of the standard option agreement, an entirely different and distinct agreement from the customer agreement which contained the attorney fee provision. The customer agreement, entered into August 26, 1982 (almost three weeks prior to the option agreement), states in paragraph 6 under the heading "Liability For Costs Of Collection":

> "The reasonable costs and expenses of collection of the debit balance and any unpaid deficiency in the accounts of [Story] with [Merrill Lynch], including, but not limited to, attorney's fees, incurred and payable or paid by [Merrill Lynch] shall be payable to [Merrill Lynch] by [Story]."

Story does not contend that this agreement is either void or voidable, or that Story was not bound by it. The standard option agreement provides the following language:

"Any agreement by [Story] with [Merrill Lynch], whether previously or hereafter made applicable to any account of [Story's] with [Merrill Lynch], shall also apply to such option transactions except to the extent which it conflicts with this agreement. In the event of conflict, this agreement shall control, and where this is no conflict, each provision of each agreement shall apply."

It is readily apparent that the customer agreement was incorporated into the standard option agreement, and the attorney fees and costs provision of the customer agreement does not conflict with the standard option agreement. Therefore, it is apparent that Merrill Lynch was entitled to attorney fees in the action below.

■ Story's second contention with respect to the issue of whether Merrill Lynch was entitled to fees is that Merrill Lynch failed to prove that the fees were "incurred and payable or paid." However, the affidavit of Cantwell, Merrill Lynch's attorney, clearly stated that all fees detailed constituted "the total fees due and owing to Plaintiff's attorneys for services rendered in the prosecution of Plaintiff's claim against William K. Story." This evidence fits into a plain reading of the fees provision, and we therefore reject Story's second contention that Merrill Lynch was not entitled to fees.

The final issue we address is whether the trial court erred in the amount of attorney fees it awarded. The court in *Kaiser v. MEPC Properties, Inc.* (1987), 164 Ill. App. 3d 978, 518 N.E.2d 424, upon which Story relies heavily for support on this issue, discussed the parameters within which this issue is to be analyzed. In *Kaiser*, the court observed:

"Provisions in contracts for awards of attorney fees are an exception to the general rule that the unsuccessful litigation in a civil action is not responsible for the payment of the opponent's fees. [Citations.] In all cases, however, only those fees which are reasonable will be allowed [citations], the determination of which is left to the sound discretion of the trial court [citations]. It is also well settled that the party seeking the fees, whether for himself or on behalf of a client [citation], always bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness [citations]. An appropriate fee consists of reasonable charges for reasonable services [citation]; however, to justify a fee, more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client [citation], since this type of data, without more, does not provide

the court with sufficient information as to their reasonableness—a matter which cannot be determined on the basis of conjecture or on the opinion or conclusions of the attorney seeking the fees [citations]. Rather, the petition for fees must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor. [Citations.] Because of the importance of these factors, it is incumbent upon the petitioner to present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated. [Citations.]

Once presented with these facts, the trial court should consider a variety of additional factors such as the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and the work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client [citation], and whether there is a reasonable connection between the fees and the amount involved in the litigation [citations]. Finally, the decision of the trial court will not be reversed absent an abuse of discretion. [Citation.]" 164 Ill. App. 3d at 983-84.

■■ In this case, Merrill Lynch requested fees in the amount of $12,268.75 on a claim whose principal consisted of $3,723.57 and which ultimately resulted in a judgment of $5,148.57 being entered. The trial court awarded $6,500 in fees to Merrill Lynch. Story argues that the petition for fees was so lacking in detail that the trial court could not use its discretion in entering fees in a reasonable amount.

It is clear that a hearing was conducted on the petition. While the record reveals that Story's counsel indicated on the last day of the hearing that additional testimony from Merrill Lynch's counsel was necessary, the trial court stated that it had a figure in mind and was ready to rule. The order was subsequently entered without objection from Story's counsel, and Story does not argue that the cessation of testimony is a ground for reversal.

In argument below, Story's counsel argued the inadequacy of the fee petition, pointing out duplicative billings, billings entered for matters of purely the plaintiff's doing (i.e., the vacatur of a dismissal for want of prosecution) and time lengths which Story felt were far too long for the work entailed. The trial court specifically indicated that it was taking Story's contentions into account, and that it had disallowed numerous entries. While Story complains that no time sheets

were provided, the record reveals discussion that time sheets were available to the court, but that the time sheets generally contained no greater detail of the individual billings than the affidavit of Merrill Lynch's attorney. After a review of the record, we are convinced that the trial court's award of attorney fees was not an abuse of discretion.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

McNAMARA and EGAN, JJ., concur.