M. OVETA PICKERING, as Special Adm'r of the Estate of Arvel Pickering, Deceased, *et al.*, Plaintiffs-Appellees, v. OWENS-CORNING FIBERGLAS CORPORATION, Defendant-Appellant.

Fifth District   No. 5—92—0691

Opinion filed May 3, 1994.

Donald Francis Donovan and Jonathan E. Richman, both of Debevoise & Plimpton, of New York, New York, and Thomas B. Weaver, of Armstrong, Teasdale, Schlafly & Davis, of St. Louis, Missouri, for appellant.

Randall A. Bono, Michael R. Bilbrey, Pamela J. Wise, and William J. Kohlburn, all of Bono, Goldenberg, Hopkins & Bilbrey, P.C., of Wood River, and Michael Brickman, of Ness, Motley, Loadholt, Richardson & Poole, of Charleston, South Carolina, for appellees.

JUSTICE WELCH delivered the opinion of the court:

These four consolidated actions, one for wrongful death and survivorship brought by M. Oveta Pickering, as special administrator of the estate of Arvel Pickering, deceased, and three for personal injuries brought by Charles Anderson, Carl Osterman, and Donald Dossett, were brought to recover damages arising from injuries sustained by decedent and plaintiffs through employment-related exposure to asbestos-containing insulation products manufactured or distributed by defendant, Owens-Corning Fiberglas Corporation. The case was tried to a jury in the circuit court of Madison County, and the jury returned verdicts in favor of plaintiffs and against defendant, assessing both compensatory and punitive damages. Final judgment was entered April 13, 1992. Defendant's post-trial motion was denied September 15, 1992, and defendant's notice of appeal was filed October 14, 1992.

Defendant raises several issues on appeal. We will present only those facts necessary for our disposition of those issues. The first issue relates to the consolidation of the four cases in the trial court. The cases were consolidated for trial over defendant's objection by order dated October 7, 1991, the court pointing out that all of the plaintiffs were allegedly exposed to asbestos while employed at the Clark Oil Refinery in Roxana, Illinois. Defendant moved to sever the wrongful death action from the personal injury actions, arguing that presentation of evidence and argument relating to punitive damages in the personal injury actions would be prejudicial to defendant in the wrongful death action, in which punitive damages are not allowed. (See *Mattyasovszky v. West Towns Bus Co.* (1974), 21 Ill. App. 3d 46, 52-53, 313 N.E.2d 496, 500-01, *aff'd* (1975), 61 Ill. 2d 31, 330 N.E.2d 509.) In response, plaintiffs proposed that any prejudice could be averted by allowing the jury to reach a verdict in the wrongful death action before presenting any evidence regarding defendant's net worth or argument concerning punitive damages.

By order entered March 6, 1992, the trial court denied defendant's motion to sever and adopted plaintiffs' proposed procedure. Specifically, the procedure was as follows: plaintiffs would not be allowed to mention punitive damages in opening statement; both parties would present all their evidence except that relating to defendant's net worth, which is relevant only to the issue of punitive damages; the parties would argue the wrongful death action, the jury would be instructed on that action, and that action would be submitted for verdict; and following a verdict in the wrongful death action, the parties would present evidence on defendant's net worth, and the personal injury cases would be argued and submitted to the jury.

On April 1, 1992, defendant filed an objection to the court's order of March 6, 1992, adopting this procedure. Defendant argued that the order violates Illinois' proscription against bifurcated trials (see *Mason v. Dunn* (1972), 6 Ill. App. 3d 448, 451, 285 N.E.2d 191, 193) and would be prejudicial to defendant. In this objection, defendant argued that the procedure would be prejudicial to defendant not only in the wrongful death action but also in the personal injury actions, as the jury would hear evidence of decedent Pickering's death by asbestosis, which evidence would not be admissible in the personal injury actions, and that the jury's deliberations in the wrongful death action would, in some inarticulated way, affect its deliberations in the personal injury actions to the prejudice of defendant.

On appeal, defendant abandons its argument that the trial procedure violates Illinois' proscription against bifurcated trials and argues only that the trial court abused its discretion in denying defendant's motion for severance because the consolidation prejudiced defendant.

The Illinois Code of Civil Procedure provides that an action may be severed, and actions may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right. (735 ILCS 5/2—1006 (West 1992).) A motion to sever is addressed to the sound discretion of the trial judge, to be exercised in each case by an appraisal of administrative convenience and the possibility of prejudice to substantial rights of the litigants in the light of the particular problems which will arise in the course of the trial. (*Mount v. Dusing* (1953), 414 Ill. 361, 367, 111 N.E.2d 502, 505.) Inherent in the power to consolidate is the authority to integrate evidence at a joint trial in the interest of convenience and economy. *Augenstein v. Pulley* (1989), 191 Ill. App. 3d 664, 683, 547 N.E.2d 1345, 1357.

Defendant argues that it was prejudiced by the consolidation in two ways: (1) the jury in the personal injury cases heard about Pickering's death from asbestosis even though the three living plaintiffs suffered only from mild to moderate asbestosis, and the jury based the personal injury plaintiffs' damages on those awarded in the wrongful death case; and (2) the jury in the wrongful death action heard argument and evidence related to punitive damages and defendant's wilful misconduct even though punitive damages were not recoverable in the wrongful death action.

Defendant argues that evidence of Pickering's death, introduced in the personal injury cases, "undoubtedly inflamed the jury and increased the compensatory damages awarded to the personal-injury plaintiffs." Defendant argues that plaintiffs' counsel continually attempted to link the living plaintiffs with decedent in his argument and comments to the jury and asked the jury to consider the damages it had already awarded in the Pickering case as a framework for damages in the personal injury actions. Defendant concludes that "[i]t is inconceivable that this barrage of argument and testimony about Mr. Pickering's suffering, death and damages did *not* influence the jury's decisions about his three colleagues, who allegedly suffered only mild or moderate impairments." (Emphasis in original.)

●1 While defendant insists that some prejudice must have resulted from the consolidation of the wrongful death and personal injury actions, it points to no objective indication of such prejudice. We note that it is particularly difficult for us to evaluate any possible prejudice as defendant/appellant has elected not to provide us with a report of proceedings, and we will not presume prejudice where there is no objective indication of it. (See *O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 947-48, 364 N.E.2d 533, 538 (the party asserting error must demonstrate prejudice and it will not be assumed by a court of review).) As this court pointed out in *Schwartz v. Swan* (1965), 63 Ill. App. 2d 148, 159, 211 N.E.2d 122, 127:

"Juries try and determine fact issues in extremely complicated cases involving third party complaints, cross claims [sic], counterclaims, [and] multiple plaintiffs and defendants, with a high degree of perception. One of hundreds of examples is the case of *Nelson v. Union Wire Rope Corporation* [citation], in which the jury assessed damages in 18 separate verdicts, some involving injuries and some wrongful deaths, and distinguished between the defendants in a complicated case to the extent that one was exonerated. Properly instructed, there is no reason to anticipate confusion of the jury, or prejudice to the rights of any of the parties."

In the instant case, the jury was instructed in all four of the consolidated cases that the rights of each plaintiff were separate and distinct, that each plaintiff was entitled to a fair consideration of his own case, that each case was to be decided as if it were a separate lawsuit, and that each case must be governed by the instructions applicable to that case. The jury in the instant case awarded different amounts of compensatory damages to each of the plaintiffs, demonstrating that it had carefully and rationally considered the actual damages suffered by each. We see no indication of any prejudice to defendant as a result of the consolidation of the wrongful death action with the three actions for personal injuries.

Defendant argues that it was prejudiced in the wrongful death action because the jury was allowed to hear argument and evidence relating to punitive damages and defendant's wilful misconduct even though punitive damages are not recoverable in a wrongful death action. Defendant argues that this evidence "probably inflated" the compensatory damages award in the wrongful death action.

Initially, we find no error in the jury hearing evidence of defendant's wilful and wanton misconduct in the wrongful death action as the complaint in that cause includes a count alleging such wilful and wanton misconduct. Defendant does not argue that this count was improperly submitted to the jury, and in any event, it has been held that wilful and wanton misconduct is a ground for seeking recovery of pecuniary damages in a wrongful death action. *Mattyasovszky v. West Towns Bus Co.* (1974), 21 Ill. App. 3d 46, 55, 313 N.E.2d 496, 503.

Other than evidence of defendant's wilful and wanton misconduct, defendant fails to specify any argument or evidence relating to punitive damages which the jury heard in the wrongful death action. Under the procedure adopted by the trial court, evidence and argument regarding defendant's net worth, which pertains only to punitive damages, was not presented until after verdict in the

wrongful death action. We find no prejudice to defendant in the wrongful death action as a result of the consolidation of that action with the three personal injury actions.

The record in the instant case demonstrates that the trial court carefully considered the propriety of consolidation of these four cases and that each party was given ample opportunity to present its respective positions on the issue. The consolidation resulted in no prejudice to any substantial right of defendant. The trial court did not abuse its discretion in denying defendant's motion to sever the trial of the wrongful death action from that of the personal injury actions.

Defendant's next claims of error relate to its failure to comply with notices to appear directed to officers and employees of defendant and the resulting sanctions imposed by the trial court, all pursuant to Supreme Court Rule 237(b) (134 Ill. 2d R. 237(b)), and sanctions imposed pursuant to Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)) for defendant's failure to comply with certain discovery requests and orders.

On January 21, 1992, pursuant to Supreme Court Rule 237(b) (134 Ill. 2d R. 237(b)), plaintiffs served on defendant a notice to appear directed to Paul V. Daverio, defendant's chief financial officer. On February 25, 1992, plaintiffs served on defendant a notice to appear directed to Glen H. Hiner, defendant's chairman and chief executive officer, C. Duane Callender, senior in-house counsel for defendant, and Robert A. McOmber, an in-house counsel for defendant.

On February 28, 1992, Daverio, Hiner, Callender, and McOmber filed a special and limited appearance and a motion for a protective order. This motion alleged that the Illinois court had no personal jurisdiction over these individuals and could not compel them to appear at trial.

On that same date, defendant filed a motion to quash the notices to appear. The motion to quash alleged facts to demonstrate that the Illinois courts had no personal jurisdiction over any of the individuals. The motion alleged that the court could not compel their appearances at trial and that any attempt to compel their appearances would violate their constitutional rights. The motion alleged alternatively that plaintiffs had failed to show good cause for requiring the appearance at trial of these individuals and that compelling their appearances would subject defendant to undue harassment, prejudice, and hardship.

On March 5, 1992, the trial court entered an order denying defendant's motion to quash the Rule 237(b) notices to appear. The court ordered defendant to produce Hiner and Daverio, for purposes of determining defendant's net worth, financial status, and other

issues relating to punitive damages, and McOmber and Callender, who had previously answered interrogatories on behalf of defendant on substantive issues. The order recites as follows:

"Defendant *** has lead [sic] the Court to believe that none of the four individuals will appear before this Court. The Court orders that [defendant] provide the Court with a definitive answer at 12:00 noon on March 6, 1992, whether or not [defendant] will produce these gentlemen for trial purposes.

If [defendant] refuses to produce these individuals, the Court is placing [defendant] on notice that it may impose sanctions on [defendant] for its wilful and deliberate non-compliance with Supreme Court Rule 237."

In their memorandum in opposition to defendant's motion to quash the notices to appear, filed March 10, 1992, plaintiffs asserted that the need to secure evidence in support of plaintiffs' punitive damages claims constituted good cause to produce these individuals. The memorandum asserted that Daverio and Hiner were needed to testify as to facts going to defendant's net worth. Plaintiffs alleged that Callender and McOmber were needed to testify because they signed defendant's interrogatory answers and plaintiffs were entitled to examine them as to the accuracy and veracity of their answers. The memorandum asserted that there was reason to suspect that some of the interrogatories may have been answered untruthfully and fraudulently.

Plaintiffs eventually filed a motion for sanctions against defendant for its failure to comply with the notices to appear based on defendant's representation that the four individuals would not appear at trial. On March 17, 1992, the trial court entered an order granting plaintiffs' motion for sanctions. That order recites:

"that [defendant], in open Court, has stated that it will not comply with this Court's Order of March 5, 1992, directing [defendant] to produce certain of its officers to testify at trial in this matter;

that [defendant's] refusal to comply with said Order of March 5, 1992, is wilful and in complete disregard of the Court's authority;

that [defendant] has been advised of the consequences of refusing to comply and given every opportunity to comply[.]"

The court imposed the following sanctions: defendant's pleadings were stricken, and all the allegations of plaintiffs' complaints were deemed admitted; plaintiffs would be required to present a *prima facie* case on all liability issues, and the court reserved ruling on whether to enter a default judgment against defendant on all liability issues pending presentation of such *prima facie* case; plaintiffs would be required to present a case on all damages issues, but defendant

would not be allowed to cross-examine plaintiffs' witnesses or to present evidence on any liability issue; defendant would be allowed to cross-examine plaintiffs' witnesses and present evidence on all damages issues; defendant would not be allowed to present any witnesses who were current or former officers, directors, or employees of defendant; plaintiff would be allowed to present expert testimony to establish defendant's net worth and defendant would not be allowed to present any evidence on the issue of net worth; and defendant was ordered to pay plaintiffs' costs and attorney fees incurred in connection with defendant's motion to quash the notices to appear and plaintiffs' motion for sanctions.

On March 31, 1992, the court entered an order finding that plaintiffs had presented sufficient evidence at trial to establish a *prima facie* case of liability against defendant on both the negligence and wilful and wanton misconduct theories. Accordingly, pursuant to its order of March 17, 1992, the court entered a judgment by default against defendant on the issue of liability as to all counts of plaintiffs' complaints, in both negligence and wilful and wanton misconduct. The court further ordered that the issue of compensatory damages would be submitted to the jury and defendant would be allowed to present evidence on the issue of punitive damages in the personal injury cases. The order recites:

> "[I]f [defendant] relents in its refusal to produce [Hiner and Daverio] to testify concerning its net worth, this Court may reconsider and modify its sanction Order,[ ]and permit [defendant] to present evidence of its net worth."

The order further recites:

> "The Court has, throughout the presentation of Plaintiffs' evidence, advised [defendant] that the Court would entertain a motion to modify its Order imposing sanctions, if [defendant] relented in its refusal to comply with this Court's Order pursuant to Rule 237(b). [Defendant] has not done so."

On April 2, 1992, yet another sanction was entered against defendant, this time for its failure to comply with certain discovery requests and orders. On January 21, 1992, plaintiffs served on defendant interrogatories seeking financial information relating to defendant's net worth. On February 18, 1992, defendant filed its objections and initial responses to the interrogatories, and on March 10, 1992, pursuant to court order, defendant filed a supplemental response repeating and reasserting its objections to the interrogatories but providing some information. On March 31, 1992, defendant was ordered to determine what additional financial information might be available for discovery, to produce certain information for an *in*

*camera* inspection, and to produce other information for plaintiffs. On April 1, 1992, an order was entered granting defendant additional time to comply with the order of March 31. Defendant was advised that failure to comply might result in sanctions. On April 2, 1992, the court entered an order finding that defendant had failed to comply with the order of April 1 and imposing the following sanctions: plaintiffs would be allowed to amend their complaints to allege defendant's net worth was $1.5 billion, this allegation would be deemed admitted by defendant, plaintiffs would be allowed to present a *prima facie* case as to this net worth, and defendant would be prohibited from contesting it.

On appeal, defendant argues first that the trial court erred in denying its motion to quash the Rule 237(b) notices to appear because: (1) plaintiffs failed to show good cause for requiring the four named individuals to appear at trial in Illinois; and (2) use of Rule 237(b) to compel the individuals' appearances in Illinois violates both the United States and Illinois Constitutions.

Supreme Court Rule 237(b) provides that the appearance at trial of a person, who at the time of trial is an officer, director, or employee of a party, may be required by serving the party with a notice designating the person who is required to appear. (134 Ill. 2d. R. 237(b).) Compelling the appearance of a party at trial is a matter for the sound discretion of the trial court, and the court's power to order a party to appear should only be exercised for a good cause and in such a manner that a party may not be subject to harassment, oppression, or hardship. *Pacemaker Food Stores, Inc. v. Seventh Mont Corp.* (1983), 117 Ill. App. 3d 636, 648, 453 N.E.2d 806, 815.

In *Oakview New Lenox School District No. 122 v. Ford Motor Co.* (1978), 61 Ill. App. 3d 194, 378 N.E.2d 544, plaintiff served notice on defendant pursuant to Supreme Court Rule 237(b) that the presence of D.R. Jollife would be required at trial. Jollife was an assistant secretary of defendant, was a resident of Michigan, and had signed answers to interrogatories on behalf of defendant. Jollife's affidavit attached to the interrogatories indicated that the matters stated in the answers were not within his personal knowledge but had been assembled by authorized employees and counsel of defendant. Defendant filed a motion to quash the notice to appear, which was denied. At the beginning of trial defendant indicated that Jollife would not appear because he knew nothing about the case, and defendant asked leave to file Jollife's affidavit and deposition, both of which asserted his lack of knowledge of any of the matters involved in the case. The court refused to allow the documents to be filed and indicated that Jollife was required to appear. When Jollife did not appear at trial

when called, the court imposed sanctions upon defendant pursuant to Supreme Court Rule 237.

On appeal, this court held that defendant had submitted to the personal jurisdiction of the court by filing a general appearance in the case, and that this jurisdiction included the power to order a corporate party to produce its officers and directors at trial. (*Oakview New Lennox*, 61 Ill. App. 3d at 198, 378 N.E.2d at 547.) This court also recognized, however, that the power to order a party to appear should only be exercised for good cause and in such a manner that a party may not be subjected to harassment, oppression, or hardship. (*Oakview New Lennox*, 61 Ill. App. 3d at 198-99, 378 N.E.2d at 547.) The court found:

> "[T]he record is utterly devoid of any relevant information which plaintiff expected to elicit from Jollife at trial, but does contain numerous sworn statements declaring that Jollife has no personal knowledge of the matters involved. In light of plaintiff's failure to assert any facts to the contrary, or to disclose what purpose would be served by requiring Jollife to appear, we are compelled to conclude that plaintiff failed to show good cause." (*Oakview New Lennox*, 61 Ill. App. 3d at 199, 378 N.E.2d at 547-48.)

The court held that the order requiring Jollife to be present at trial was erroneous and that the sanctions imposed were also improper. *Oakview New Lennox*, 61 Ill. App. 3d at 199, 378 N.E.2d at 548.

In *Soto v. E.W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 452 N.E.2d 572, sanctions were imposed on a defendant corporation for failure to produce an employee at trial pursuant to a Rule 237(b) notice to appear. The person noticed to appear was James Lewis, an engineer. Defendant argued that under *Oakview*, it was not required to produce Lewis because Lewis had no personal knowledge of relevant facts. The court found *Oakview* to be distinguishable, however, because, although defendant indicated that Lewis possessed no relevant information, unlike *Oakview*, no supporting documents were presented by defendant. Furthermore, the record contained numerous statements by plaintiff's counsel concerning the information expected to be elicited from Lewis, and this information was relevant and not cumulative. The court found that, under these circumstances, defendant was not justified in refusing to produce the witness Lewis, and the court affirmed the sanctions imposed.

●2 We find the facts in the case at bar to be more like those in *Soto* than those in *Oakview*. The record in the instant case demonstrates the relevant information which plaintiffs hoped to elicit from

the four named individuals. Hiner and Daverio were wanted to testify to the defendant's net worth, a fact which is relevant to plaintiffs' claims for punitive damages. It can hardly be argued that Hiner, defendant's chief executive officer, and Daverio, defendant's chief financial officer, would not be possessed of this relevant information. Both Callender and McOmber were corporate counsel for defendant involved in asbestos litigation. As such, their knowledge and information went beyond merely signing interrogatories on behalf of defendant, as had the noticed assistant corporate secretary in *Oakview*. They had answered, under oath, interrogatories on behalf of defendant and were needed to testify to the accuracy and veracity of those answers. The record as a whole demonstrates that plaintiffs believed that some of these interrogatories were answered untruthfully and fraudulently with respect to defendant's notice or knowledge of other claims against it for causing asbestosis. The record as a whole further demonstrates that Callender and McOmber were possessed of relevant knowledge regarding prior claims against defendant. Furthermore, nowhere in the record is there any positive assertion by defendant that these individuals did not possess the relevant knowledge or information sought by plaintiffs. The record contains no sworn affidavits or testimony to that effect, but only the argument of counsel that the individuals had no "personal knowledge."

Defendant argues that Hiner had been defendant's chief executive officer for only one month prior to the notice to appear and therefore could not have had relevant information regarding defendant's net worth. We find this argument to be speculative, unsupported by any facts and unpersuasive. Indeed, we find it highly unlikely that Hiner would have even taken the position as defendant's chief executive officer without some knowledge of defendant's financial status and net worth.

Defendant also points out that plaintiffs never sought to depose Hiner or Daverio or otherwise discover their testimony prior to noticing them to appear. We are aware of no requirement that a plaintiff engage in such discovery prior to serving a notice to appear, and defendant cites to none.

Defendant also points out that plaintiffs did not seek to obtain the desired information from lower-level employees of defendant before noticing the top executives to appear. Again, we are aware of no requirement in Illinois that relevant information be sought from lower-level employees of a corporate defendant before the officers, directors, and top-level employees may be served with a notice to appear. Supreme Court Rule 237(b) explicitly authorizes a plaintiff to require a corporate defendant's top executives, that is, its officers and

directors, to appear at trial. There is no requirement in Rule 237(b) that a plaintiff first seek relevant information from lower-level employees. While defendant correctly asserts that attempts to require testimony from top corporate officials can lead to abuse and harassment, the requirement that a Rule 237(b) notice to appear be enforced only for good cause, and not for harassment, oppression, or hardship, protects the corporate defendant and its top executives from such abuse. As we have already stated, compelling the appearance of a party at trial under Rule 237(b) is a matter for the sound discretion of the trial court, rather than a mandatory requirement. (*Pacemaker Food Stores, Inc. v. Seventh Mont Corp.* (1983), 117 Ill. App. 3d 636, 648, 453 N.E.2d 806, 815.) That the Federal courts and some foreign jurisdictions may have imposed a requirement that information be sought first from lower-level employees does not compel such a requirement in Illinois. The Illinois Supreme Court, in promulgating its Rule 237(b), has declined to impose such a requirement, and we will not presume to question its wisdom.

Defendant argues that application of Rule 237(b) in this case to compel the appearance at trial of the four officers and employees of defendant violates the due process guarantees of both the United States and Illinois Constitutions. Defendant argues that the Illinois court had no personal jurisdiction over the four noticed individuals, a fact which the plaintiffs and the trial court concede, and that the court could not properly pressure their employer to coerce their appearance. Defendant argues that a private employer's actions become the State's actions for due process purposes when they are coerced or required by State authority. Defendant argues that the fourteenth amendment to the United States Constitution and the even more stringent due process principles of the Illinois Constitution prohibit the court from trying to force defendant to do what the court itself could not constitutionally accomplish. In sum, defendant argues that the circuit court cannot constitutionally attempt to compel, through sanctions imposed on defendant, the appearance at trial of witnesses over whom it has no personal jurisdiction.

•3 Precisely the same argument was presented to this court in *Johnson v. Owens-Corning Fiberglas Corp.* (1992), 233 Ill. App. 3d 425, 433-34, 599 N.E.2d 129, 134, *appeal denied* (1992), 147 Ill. 2d 627, 606 N.E.2d 1227, *cert. denied* (1993), 508 U.S. 907, 124 L. Ed. 2d 246, 113 S. Ct. 2335, and we rejected it there as we reject it here. We stated therein:

> "As long as the order is directed at the corporate defendant rather than the individual employees and directors, principles of

due process are not violated, and a court may sanction a corporate defendant for its failure to produce its employees." (*Johnson*, 233 Ill. App. 3d at 434, 599 N.E.2d at 135.) We emphasize that the circuit court is not attempting to compel the noticed individuals to do anything and that no sanctions are imposed against those individuals. It is only the corporate defendant, who has already conceded the circuit court's personal jurisdiction over it, which the court is attempting to compel, and it is only against the corporate defendant that sanctions are imposed. The circuit court has no, and asserts no, personal jurisdiction over the noticed individuals, but the court asserts jurisdiction only over the corporate defendant. No principles of due process are violated in this context.

Defendant's next argument is that the sanctions imposed against it for its failure to comply with the Rule 237(b) notices exceed the scope of sanctions permitted by Supreme Court Rule 237. That rule provides that upon a failure to comply with the notice the court "may enter any order that is just, including any order provided for in Rule 219(c) that may be appropriate." (134 Ill. 2d Rules 237(b), 219(c).) Defendant argues that the sanction order entered was not "just" because the defaults imposed on defendant went far beyond any matters about which any of the four individuals competently could have testified, that is, the sanctions imposed were not reasonably related to the violations. Defendant argues that the scope of the sanctions exceeds all reasonable bounds.

The particular sanction imposed for a failure to comply with a Rule 237(b) notice to appear rests largely within the trial court's discretion, the exercise of which will not be disturbed absent an abuse of discretion. (*Quarles v. Nationwide Insurance Co.* (1978), 66 Ill. App. 3d 455, 465, 383 N.E.2d 1234, 1241.) Among the sanctions specifically provided in Supreme Court Rule 219(c), and therefore proper for a violation of Rule 237(b), are the striking of pleadings and the entry of default judgment. (134 Ill. 2d R. 219(c).) While both Rule 237(b) and Rule 219(c) provide for the entry of any order which is just, it has been held that, at least under Rule 219(c), the sanction imposed must bear some reasonable relationship to the information withheld in defiance of the discovery request or order. (See *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 197, 226 N.E.2d 6, 16.) The sanctions which may be imposed under Rule 219(c) are:

"such as are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks but the court may not impose sanctions which are designed not to accomplish the objects of the discovery but to impose punishment." (*Bua*, 37 Ill. 2d at 196, 226 N.E.2d at 16.)

However, a court is not limited to only those sanctions enumerated in Rule 219(c) but may enter any order which is just, provided the purpose of a sanction for a discovery violation is to accomplish discovery rather than to inflict punishment. (*Dyduch v. Crystal Green Corp.* (1991), 221 Ill. App. 3d 474, 480, 582 N.E.2d 302, 307.) Furthermore, the striking of an answer, thereby causing a default, is the most severe sanction a court can impose on a recalcitrant defendant, and such sanction is proper only in those cases where the actions of a party show deliberate, contumacious, or unwarranted disregard of a court's authority. *Johnson v. Owens-Corning Fiberglas Corp.* (1992), 233 Ill. App. 3d 425, 435, 599 N.E.2d 125, 135.

●4 Considering all of this, we are of the opinion that the trial court did not abuse its discretion in striking defendant's answer and entering a default judgment against it on all liability issues. There is no question that the actions of the defendant in refusing to comply with the Rule 237(b) notices to comply were deliberate, contumacious, and an unwarranted disregard of the court's authority. Defendant was warned prior to the imposition of any sanctions that its failure to comply with the notices might result in sanctions. The trial court repeatedly characterized defendant's refusal as wilful and deliberate and in complete disregard of the court's authority. Therefore, this most severe of sanctions was warranted by the defendant's actions.

Nor can there be any question that the purpose of the sanctions imposed was to compel the defendant to comply with the notices and not to punish the defendant for its refusal. Defendant was threatened with sanctions before they were imposed. In its order of March 17, 1992, the trial court noted that defendant had been advised of the consequences of refusing to comply and had been given every opportunity to comply. In the court's order of March 31, 1992, the court expressly stated that, if defendant relented in its refusal, the court would consider modifying the sanction order. That same order states that the court had repeatedly advised defendant that it would entertain a motion to modify the sanctions should defendant decide to comply with the notices to appear. It is clear that the court did not wish to punish defendant but imposed sanctions only in an attempt to compel defendant to comply with the notices to appear.

There are numerous reported cases in which similar sanctions were imposed as a result of a defendant's wilful refusal to comply with a Rule 237(b) notice to appear. In *Johnson*, defendant refused to produce two corporate employees pursuant to Rule 237(b) notices. The court ordered defendant's pleadings stricken and entered default judgment against it on all liability issues. On the issue of damages, defendant was restricted in its proof. On appeal, this court found

that the record revealed that defendant had had ample opportunity to comply with the notices but had wilfully refused to do so. This court found sufficient evidence in the record to support a finding that the noticed witnesses would have had relevant information on the issues as to which sanctions were imposed. The trial court did not abuse its discretion in striking defendant's pleadings and entering default judgment against defendant. See also *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Story* (1991), 218 Ill. App. 3d 829, 578 N.E.2d 1129; *People ex rel. Hartigan v. Organization Services Corp.* (1986), 147 Ill. App. 3d 826, 498 N.E.2d 597; *Quarles v. Nationwide Insurance Co.* (1978), 66 Ill. App. 3d 455, 383 N.E.2d 1234.

We do note in the instant case that plaintiffs were required to present a *prima facie* case, and that default judgment was not entered against defendant until the trial court was satisfied that plaintiffs had done so. See *Ryan v. Bening* (1978), 66 Ill. App. 3d 127, 383 N.E.2d 681.

Finally, we find that the sanctions imposed are reasonably related to the defendant's refusal to produce at trial Hiner, Daverio, Callender, and McOmber. The testimony of Hiner and Daverio was desired on the issue of defendant's net worth. The trial court's sanction of prohibiting defendant from presenting any evidence of its net worth was reasonably related to the testimony sought to be elicited from these two individuals. The testimony of Callender and McOmber was reasonably related to the issues of liability. Either or both of these individuals had knowledge relating to defendant's notice of prior asbestosis claims against it, which goes to both negligence and wilful and wanton misconduct. As defendant's counsel involved in asbestos litigation, both Callender and McOmber would be possessed of relevant knowledge on the issues of liability. While the knowledge of these two individuals with respect to causation is not crystal clear from the record, we again point out that appellant/ defendant has declined to provide this court with a report of proceedings before the trial court. It is the appellant's burden to provide this court with a sufficiently complete record of the proceedings at trial to support a claim of error, and any doubts which may arise from the incompleteness of the record will be resolved against the appellant. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959.) Furthermore, in the absence of a complete record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959.

Defendant proposes several other possible sanctions which it argues would have been more appropriate here. While there were

certainly other sanctions available, it is not our function to substitute our judgment for that of the trial court where there is no abuse of the trial court's discretion. We find no such abuse here.

Defendant also challenges on appeal the trial court's imposition of sanctions pursuant to Supreme Court Rule 219(c) for defendant's failure to fully respond to plaintiffs' discovery requests for financial information in connection with their punitive damages claim. The trial court ordered that plaintiffs' amended allegations that defendant's net worth was $1.5 billion would be deemed admitted and that defendant would not be allowed to contest this value. Defendant argues that the sanction was improper for two reasons: (1) defendant had sufficiently responded to all "legitimate" discovery requests; and (2) the sanction was not reasonably related to the violation.

Defendant argues that the trial court erred in ordering defendant to produce certain financial information because it had already produced information sufficient to establish its net worth and financial discovery on punitive damages should be limited, production of the requested information would have been unduly burdensome, and disclosure of certain nonpublic materials could have provided valuable information to defendant's competitors and created securities laws problems for defendant.

Supreme Court Rule 201(b)(1) provides that the scope of discovery is limited to "any matter relevant to the subject matter involved in the pending action." (134 Ill. 2d R. 201(b)(1).) The range of relevant and material information which is discoverable includes not only what is admissible at trial but also that which leads to what is admissible at trial. (*Willing v. St. Joseph Hospital* (1988), 176 Ill. App. 3d 737, 744, 531 N.E.2d 824, 829.) Considerable latitude is permitted during discovery, and the trial court has broad discretion in ruling on discovery matters. (*Willing*, 176 Ill. App. 3d at 744, 531 N.E.2d at 829.) Absent a manifest abuse of its discretion, affirmatively and clearly shown, the trial court's order concerning discovery shall not be disturbed on appeal. (*Willing*, 176 Ill. App. 3d at 744-45, 531 N.E.2d at 829.) Furthermore, the question of whether or not a party has properly answered interrogatories is within the discretion of the trial court, and that decision will not be disturbed unless that discretion is improperly exercised. (*Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 23-24, 484 N.E.2d 365, 368.) The burden is on the appellant to affirmatively show an abuse of discretion. *Bradfield*, 137 Ill. App. 3d at 24, 484 N.E.2d at 368.

It is well settled that evidence of a defendant's net worth and pecuniary position may be introduced in a case in which punitive

damages is an issue. (*Fopay v. Noveroske* (1975), 31 Ill. App. 3d 182, 200, 334 N.E.2d 79, 93.) The information which plaintiffs sought from defendant was aimed at discovering defendant's net worth or pecuniary position. While all of the information sought in discovery may not have been admissible at trial for purposes of proving defendant's net worth, if the information sought might have led to such admissible evidence, then it was within the proper scope of discovery. We are aware of no Illinois case which limits the scope of financial discovery relating to punitive damages. Despite defendant's arguments, it has failed to affirmatively show that the trial court abused its discretion in ordering defendant to comply with plaintiffs' discovery requests.

●5 According to the trial court's order of March 31, 1992, the only financial information which defendant had provided to plaintiffs was published annual reports and proxy statements. Plaintiffs had requested a detailed financial statement, similar to the one used by management and directors of defendant. The court's order directs defendant to produce for plaintiffs any "financial statements, audited or otherwise, [which] are provided to the management of the [defendant]." This order is hardly unreasonable or unduly burdensome to defendant, and production might lead plaintiffs to admissible evidence concerning defendant's true net worth, which may or may not be accurately reflected in its published annual reports and proxy statements. Furthermore, the court gave defendant the option of requesting a hearing for the purpose of showing why the request is burdensome to defendant and cannot be met.

The court's order also directs defendant to produce for *in camera* inspection "all business plans and financial projections related to future operations of" defendant and to produce a witness who will testify as to why the release of this information would place defendant at a competitive disadvantage. Obviously, the court took pains to protect defendant from having to reveal any information which might benefit its competitors. We find no abuse of discretion in this order.

Finally, the court ordered defendant to "produce all appraisals, estimates or other statements of the fair market value of the assets and liabilities of [defendant] along with the means or methodology of determining said market value and the purpose for which said fair market value was calculated." Again, we find nothing unduly burdensome in this order. The court did not, and could not, ask defendant to prepare such documents, but only to produce those that already existed. The defendant failed to comply with any terms of the order, despite having received a continuance in order to do so.

We simply do not agree with defendant that it sufficiently responded to all "legitimate" discovery requests. We find nothing unreasonable in the discovery order entered by the trial court. The information sought is relevant to the issue of punitive damages, the discovery requests were not unduly burdensome, and the court took pains to protect defendant from having to reveal information which might hurt its competitive position. The trial court did not abuse its discretion in entering the discovery order and did not err in finding that defendant had failed to comply with it.

Defendant also argues that the sanction imposed was not reasonably related to the discovery violation or the withheld information. Defendant argues that a more appropriate sanction was available. It is not our function to substitute our judgment for that of the trial court. The trial court's order will not be disturbed absent an abuse of discretion. (*B&Y Heavy Movers, Inc. v. Fluor Constructors, Inc.* (1991), 211 Ill. App. 3d 975, 984, 570 N.E.2d 777, 783.) The sanction imposed was reasonably related to defendant's refusal to allow discovery of relevant financial information relating to its net worth. We find no abuse of discretion.

Defendant's next argument on appeal is that the punitive damages awards violate its right to due process because: (1) the court's instruction to the jury did not give the jury sufficient guidance in assessing punitive damages; (2) the court itself did not conduct a meaningful postverdict review of those awards; and (3) the awards are excessive. Defendant presented an identical argument to this court in *Kochan v. Owens-Corning Fiberglass Corp.* (1993), 242 Ill. App. 3d 781, 610 N.E.2d 683, where we rejected it, as we reject it here.

●6 Defendant argues that the jury instructions on punitive damages (one of which, we note, is standard Illinois Pattern Jury Instructions number 35.01 (Illinois Pattern Jury Instructions, Civil, No. 35.01 (3d ed. 1989)) were unconstitutional in that they gave the jury essentially unlimited discretion in determining whether to award punitive damages and in what amount. We find, as we did in *Kochan* (242 Ill. App. 3d at 800, 610 N.E.2d at 695), that defendant has waived any error in the jury instructions by failing to tender its own version of instructions. To preserve an objection to a jury instruction, a party must both specify the defect claimed and tender a correct instruction. (*Deal v. Byford* (1989), 127 Ill. 2d 192, 202-03, 537 N.E.2d 267, 271.) It is the responsibility of the party challenging a jury instruction to submit an instruction to the trial judge that states the law for which he argues on appeal. *Deal*, 127 Ill. 2d at 203, 537 N.E.2d at 271.

In any event, we state again what we stated in *Kochan*: "[w]e do not believe these jury instructions gave the jury such 'unbridled discretion' that they were unconstitutional." (*Kochan*, 242 Ill. App. 3d at 800, 610 N.E.2d at 695.) The jury instruction given in the instant case is identical to that given in *Kochan*, and it does not violate defendant's due process rights. Defendant argues in this appeal that the instruction given in the instant case is worse than that given in *Kochan* because the trial court, on its own initiative and after the jury instruction conference, while reading the instructions to the jury, told the jury that it could award punitive damages in "any amount you feel is appropriate." However, because defendant has failed to provide us with a report of proceedings, this statement is not contained in the record on appeal. The written instructions contained in the record on appeal do not include this language. In the absence of a report of proceedings, we must assume that the jury was instructed in accordance with the written instructions contained in the record on appeal. *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959.

Defendant also argues that the trial court conducted a "standardless, unconstrained review" of the jury's punitive damages award, specifically referring to the trial court's lack of discussion of the issue and its brief ruling, which defendant refers to as an "unexplained assertion." The trial court held that the punitive damages award was "reasonable, supported by the evidence and not obviously the result of passion or prejudice." Defendant sets forth numerous factors which it believes the trial court should have considered in reviewing the jury's punitive damages award. Defendant argues that, because the trial court "applied no definable criteria whatsoever in denying [defendant's] post-trial motions," it failed to "conduct a constitutionally meaningful review of the jury's verdict," and its review did not "constitute the type of post-trial scrutiny that due process requires."

●7 As we stated in *Kochan*, "We do not agree that without a more thorough discussion there cannot be an effective appellate review." (*Kochan*, 242 Ill. App. 3d at 801, 610 N.E.2d at 696.) The fact that the trial court's ruling was stated briefly does not in any way imply that its review was cursory, standardless, or meaningless. We will not repeat what we have already held in *Kochan* on this issue. Defendant's due process rights were not violated by the trial court's postverdict review of the jury's punitive damages award.

Finally, defendant argues that the $2.5 million in punitive damages awarded to each of the three personal injury plaintiffs are so excessive as to violate defendant's right to substantive due process. Defendant argues that the punitive damages awarded are grossly out

of proportion to the compensatory damages awarded ($255,000 to Osterman; $138,000 to Dossett; and $102,500 to Anderson), and that each plaintiff received the same punitive damages award despite differing compensatory damages awards. Defendant further argues that the total $7.5 million award is particularly excessive in light of the multitude of other asbestosis suits to which defendant is subject, with their actual and potential punitive damages awards.

•8 We find that the punitive damages awarded here do not violate defendant's right to substantive due process. We do not find the amounts of the awards excessive in themselves. Nor are we aware of any requirement in Illinois that punitive damages bear some proportional relationship to the compensatory damages awarded. Defendant has directed us to no such case. Indeed, Illinois courts have held that the amount of punitive damages does not have to be proportional to the amount of compensatory damages awarded. (See *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 711, 450 N.E.2d 1199, 1206.) The United States Supreme Court imposed no such requirement on the States in *Pacific Mutual Life Insurance Co. v. Haslip* (1991), 499 U.S. 1, 113 L. Ed. 2d 1, 111 S. Ct. 1032, upon which defendant relies. *Haslip* merely approved of the procedure for reviewing punitive damages awards adopted by the courts in Alabama; it did not set forth any specific requirements that other States must follow.

With respect to defendant's argument that the punitive damages awards are excessive because they fail to take into account the punitive damages judgments that already have been awarded and might in the future be awarded against defendant, we note that in Illinois the potential liability of the defendant is a proper factor to consider in reviewing an award of punitive damages. (*Hazelwood*, 114 Ill. App. 3d at 713, 450 N.E.2d at 1207.) We stated there that it is appropriate to take into consideration both the punitive damages that have been awarded in prior suits and those that may be granted in the future. (*Hazelwood*, 114 Ill. App. 3d at 713-14, 450 N.E.2d at 1207.) However, there is nothing in the record in the case at bar to lead us to believe that the trial court did not consider this factor in reviewing the jury's award of punitive damages. Our review of the punitive damages award does not lead us to conclude that the amount of the award was so excessive as to violate defendant's right to substantive due process.

We turn now to the final argument presented by defendant on appeal. Defendant argues that the trial court erred in ordering defendant to produce, pursuant to plaintiffs' discovery request, a certain in-house memorandum written by in-house counsel Callender, to his immediate supervisor, who was the attorney in charge of litigation

for defendant. The memorandum was written October 14, 1980, and concerned defendant's discovery of certain asbestos-related workers' compensation claims that had been filed in the 1950's and 1960's and previously had not been known to exist in defendant's files. Defendant claims that the memorandum contains attorney analyses, legal opinions, and mental impressions about those workers' compensation claims and about defendant's asbestos litigation strategy.

Defendant voluntarily provided a redacted copy of the memorandum to plaintiffs' lawyer prior to trial. Plaintiffs moved for production of the unredacted memorandum, and on April 1, 1992, the trial court ordered defendant to produce for *in camera* inspection the unredacted memorandum to determine if the redacted portions were privileged. On that same date, the trial court ordered that the unredacted memorandum would be shown to plaintiffs' counsel for the sole purpose of allowing argument on whether the document was privileged.

On April 3, 1992, the trial court entered an order noting plaintiffs' claim that the memorandum demonstrates fraud and a coverup on the part of defendant such that any privilege may not apply to the memorandum and finding that plaintiffs had made a *prima facie* showing of such fraud in that it appeared that defendant had information pertinent to the case regarding asbestos-related workers' compensation claims which had not been disclosed to plaintiffs. Accordingly, the court ordered that defendant produce the complete document for *in camera* inspection.

On April 6, 1992, defendant filed its objections to production of the privileged document, which was supported by affidavits. On April 7, 1992, this court entered an order denying defendant's emergency motion for a stay of the proceedings pending consideration of its motion for leave to file a complaint for an order of *mandamus* or prohibition or supervisory order.

On April 8, 1992, the trial court entered an order in which it recites that it had shown the memorandum to plaintiffs' counsel for the purpose of receiving assistance in determining whether said memorandum was privileged, and that following argument, the court had determined that the memorandum was deprivileged under the "crime-fraud" exception to the attorney/client privilege. The trial court's order further recites that plaintiffs' counsel had indicated that he had disseminated the memorandum to various interested parties. The order recites that, on April 8, 1992, the trial court had received an order from the supreme court of Illinois allowing defendant's motion for an emergency stay and directing the trial court to enter an order requiring that all copies of the memorandum

be returned to the court and retained under seal and directing that plaintiffs take all available measures to prevent further disclosure of the memorandum or its contents. Accordingly, the trial court ordered that plaintiffs and their counsel return to the court all copies of the memorandum in their possession, that plaintiffs and their counsel file affidavits of compliance, and that plaintiffs and their counsel refrain from any further dissemination of the memorandum or its contents and take all available measures to prevent further disclosure of the memorandum and its contents pending further order of court. All copies of the memorandum were to be retained under seal in the court pending further court order.

On April 13, 1992, the court entered an order supplementing its order of April 8, 1992. The court ordered plaintiffs' counsel to return all copies of the memorandum *instanter* so that all copies could be retained under seal, to provide a list to the court and to defendant of all persons, law firms, or other entities to whom copies of said memorandum were provided and to whom the contents of said memorandum were disclosed, to send a copy of the supreme court's order of April 8 granting defendant's motion for emergency stay to all persons to whom copies of the memorandum had been provided or to whom its contents had been disclosed, to verify to the trial court and defendant the return of each copy of the memorandum and from whom it was received, and to take all available measures to prevent further disclosure of said memorandum or its contents. Apparently, the memorandum was never used by plaintiffs at trial and was never introduced into evidence or shown to the jury.

Defendant argues on appeal that the trial court erred in finding that the memorandum was not protected from discovery by the attorney/client privilege and the attorney work-product doctrine and that the court improperly ordered its production. We think this issue is clearly moot at this stage of the proceedings, and we decline to address it.

An issue is considered moot if no actual controversy exists or where events occur which make it impossible for the court to grant effectual relief. (*Edwardsville School Service Personnel Association, IEA-NEA v. Illinois Educational Labor Relations Board* (1992), 235 Ill. App. 3d 954, 958, 600 N.E.2d 910, 914.) Courts of review will generally not consider issues where the results are not affected regardless of how the issues are decided. (*Edwardsville School Service Personnel Association*, 235 Ill. App. 3d at 958, 600 N.E.2d at 914.) When it becomes apparent that an opinion cannot affect the results as to the parties or the controversy before it, the court should not resolve the question merely for the sake of setting a precedent or to govern

potential future cases. (*Edwardsville School Service Personnel Association*, 235 Ill. App. 3d at 958, 600 N.E.2d at 914.) Such is precisely the situation in the case at bar.

●9 Defendant has already obtained the result it desired in the trial court when the court ordered all copies of the memorandum returned to the court and retained under seal. The memorandum was not used against defendant at the trial, so defendant was not prejudiced by the initial order compelling production of the memorandum. This issue presents no actual controversy between the parties, and it is impossible for us to grant any effective relief to defendant. Because the memorandum was not used at trial, the results of that trial will not be affected regardless of how the issue presented is decided by us. It is apparent to us that any opinion we state on this issue cannot affect the results as to the parties or the controversy between them, and we will not resolve the question merely for the sake of setting a precedent or to govern potential future cases. We note that, in our opinion, this issue does not fall within any of the recognized exceptions to the mootness doctrine. See *Edwardsville School Service Personnel Association*, 235 Ill. App. 3d at 959-61, 600 N.E.2d at 914-16.

For the foregoing reasons, the judgment of the circuit court of Madison County is hereby affirmed.

Affirmed.

LEWIS, P.J., and GOLDENHERSH, J., concur.